KORNETZKE, Respondent, v. CALUMET COUNTY and others, Appellants.

*October 8—November 3, 1959.*

For the appellants there were briefs and oral argument by *Robert W. Lutz* of Chilton, for Calumet county, *Alexander Hopp*, assistant district attorney, for Sheboygan county, and *S. Richard Heath*, corporation counsel, for Fond du Lac county.

For the respondent there was a brief by *Mulhern & Lucas* of New Holstein, and oral argument by *Thomas H. Lucas*.

MARTIN, C. J.   The tree which the plaintiff struck is an elm tree about 65 feet high and measuring 44 inches in diameter four feet above the ground.  Highway Q is a black-top road running in an east-west direction and the north lane curves to the north around a so-called boulevard in which the tree stands.  The boulevard extends about five feet to the north of the tree, four and one-half feet to the south of the tree, 23 feet to the west of the tree and a little more than six feet to the east of the tree.

The evidence is disputed whether there were warning posts or reflectors on the east side of the tree. The highway foreman testified there were guardrails with button reflectors to the east of the tree on the day before the accident and that two days after the accident he picked up three "snapped off" guardrails on the east side of the road about 15 feet from the tree. Two residents of the neighborhood testified there were no guardrails, posts, reflectors, or markers east of the tree.

Plaintiff was driving west on Highway Q about 10:30 p. m. on July 21, 1956. There was a heavy fog and the road was damp. Plaintiff's car struck the east side of the tree between the headlights and it left skid marks which extended from the rear of the car directly east for 90 feet. The entire front of the car was caved in by the impact; it was a total wreck.

It is defendants' contention that, assuming they were negligent in failing to maintain the highway in a reasonably safe condition, the negligence of the plaintiff was, as a matter of law, as great as or greater than that of the defendants. We agree.

Plaintiff testified he could not recall what happened immediately prior to the accident; that his last recollection was coming down a hill a half mile east of the tree and that he was traveling between 25 and 35 miles per hour. He further testified that the fog was patchy, being dense in low spots; that as he came down the hill east of the tree he was coming into a fog; that the visibility was 60 or 70 feet in the fog.

There is only one conclusion that can be drawn from the physical evidence: Plaintiff's speed was excessive considering the special hazards created by the fog, the pavement conditions, and the darkness.

The 90-foot skid marks indicate that plaintiff had braked his car for that distance. One of the officers testified that

under the road conditions existing the night of the accident a 90-foot braking distance would indicate that the car was traveling between 40 and 45 miles per hour. But plaintiff's car did not come to a stop in 90 feet by application of the brakes. It came to a stop because it hit the tree and the evidence of the damage to the car shows that it hit the tree with tremendous force.

One of the witnesses, called to the scene of the accident to remove the car, testified that the wheels of the car were locked, the drive shaft bent, the radiator pushed back to the engine between the headlights, the motor block pushed back, the steering column bent, the shift mechanism broken or jammed, the rear end and rear wheels bent forward, and one of the rear tires was "shot" in towing the car home because it rubbed on the body. Plaintiff testified his first recollection after the accident was being pinned between the steering wheel and the seat at the chest, and his foot caught between the floor and a pedal, from which he extricated himself by slipping out of his shoe and lying down on the seat to get from behind the wheel. He testified the car was a "total wreck" and that his insurance company paid him $1,495, the price he had paid for the car a week before, less the $50 deductible under his policy.

Another witness testified that he observed the car had "bounced back" about two or three feet from the tree; that the front of the car was pushed back; that the front bumper had been pushed in two feet; that the impact was at the center of the car.

From this evidence of damage to the car, of the 90-foot tire marks, and of tested braking distances, there is no question but that plaintiff was driving at an excessive rate of speed, considering the weather and road conditions. Sec. 346.57, Stats., provides:

"(2) No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of a vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"(3) The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, when passing school children, highway construction, or maintenance workers or other pedestrians, and when special hazard exists with regard to other traffic or by reason of weather or highway conditions."

Clearly, plaintiff's speed was in violation of the statute. He knew the visibility was poor in the areas of fog, and if he had appropriately reduced his speed he would have been able to avoid the accident.

This court has several times commented on the effect of overpowering speed in cases involving assumption of risk by a guest. See *Young v. Nunn, Bush & Weldon Shoe Co.* (1933), 212 Wis. 403, 249 N. W. 278; *Bronk v. Mijal* (1957), 275 Wis. 194, 81 N. W. (2d) 481; *Tomchek v. Mutual Automobile Ins. Co. of Wisconsin* (1959), 6 Wis. (2d) 577, 95 N. W. (2d) 220; *Romberg v. Nelson,* ante, p. 174, 98 N. W. (2d) 379. If a guest, whose duty to exercise ordinary care is of a lesser degree than that of the driver, can be held to assume all elements of negligence where overpowering speed is present, certainly the negligence of the driver, who is directly responsible for the accident, is greater. It is apparent to this court that more and more accidents and injuries are being caused by excessive speeds, and we feel it incumbent upon us to consider such negligence in the light

of present-day trends. It appears that in many instances accidents would not happen at all if drivers maintained a proper speed, and that where they do happen the consequences are usually more disastrous when they result from negligent speed than when they result from negligence as to lookout or management and control.

In this case, with the evidence of tire marks 90 feet long extending from the north lane straight west to the tree, it must be assumed (on the basis of braking-distance charts) that the car traveled an additional 40 to 50 feet during plaintiff's reaction time, being a total of 130 to 140 feet which the plaintiff traveled after making some observation which caused him to brake his car. In that distance he had only to turn slightly to the north to avoid the tree, and yet the path of the car was directly to the tree.

In *Loehe v. Fox Point* (1948), 253 Wis. 375, 34 N. W. (2d) 126, which is discussed in both briefs, plaintiffs brought suit against the village for maintaining a defect in the highway by reason of which the automobile in which they were riding collided with a tree alongside the street near a right-angle curve. There the accident also happened on a foggy night. The driver failed to observe the turn in the street until he saw the guard posts ahead of him; he put on his brakes and the automobile skidded and collided with the tree. He testified he was traveling between 20 and 35 miles per hour. This court held that it was the driver's speed, under conditions which impaired visibility, which was the cause of the accident. In that case the evidence showed that, although the driver's speed was negligent under the circumstances, he had at least the opportunity to attempt to negotiate the curve. In this case all the physical facts lead to the conclusion that plaintiff's speed was so great that it made it impossible for him to do anything to avoid the accident.

Under all the circumstances it must be held that, assuming there was negligence on the part of the defendants (which

we do not decide), the negligence of the plaintiff was at least as great as that of the defendants and there can be no recovery.

We may say that in our opinion it was not sufficient to submit to the jury, on the issue of plaintiff's negligence, only the question whether he was "negligent in respect to his own safety." The jury would have been in a better position to compare the negligence of the parties if that of the driver had been separated as to the various elements of lookout, speed, and management and control. See *McGuiggan v. Hiller Brothers* (1934), 214 Wis. 388, 253 N. W. 403. In view of our holding it becomes unnecessary to answer other questions regarding the special verdict, instructions, and the stipulation of the defendants as to their joint liability.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

FAIRCHILD, J., dissents.