SKYBROCK, Respondent, v. CONCRETE CONSTRUCTION COMPANY, INC., Appellant.*

*No. 209. Argued April 1, 1969.—Decided May 6, 1969.*
(Also reported in 167 N. W. 2d 209.)

* Motion for rehearing dismissed, with costs, on June 24, 1969.

For the appellant there were briefs by *Prosser, Zimmermann, Wiedabach, Koppa & Lane* of Milwaukee, and oral argument by *James W. Lane.*

For the respondent there was a brief by *Frederick Hersh* and *John D. Finerty,* and oral argument by *Mr. Hersh* and *Mr. Russell R. Stepke,* all of Milwaukee.

CONNOR T. HANSEN, J. The decision in this case is determined by the extent of the duty of the defendant to the plaintiff, and whether the plaintiff established that the defendant had acquiesced in permitting residents of the area to cross Lincoln avenue at the place of the accident.

The construction work being done on Lincoln avenue was open and notorious and the plaintiff had an alternate route via paved sidewalks.

There is no question that plaintiff knew that the street was closed and under construction. Barricades had been placed blocking vehicular traffic on Lincoln avenue east of 20th street down to where the project ended, at 18th street. There were also other barricades placed in the area. As the trial judge stated in ruling

that a decision on the motion for a directed verdict would be held in abeyance pending the jury verdict:

"I would say under the circumstances, if there were 100 barricades up there, it wouldn't make any difference as far as the plaintiff is concerned. She had the warning of construction. She lived there, knew it was going on. As far as she was concerned, she had the warning. Barricades wouldn't make any difference. There is no testimony to show the absence of barricades would have made any difference."

The trial court instructed that as to plaintiff's negligence, "one who travels on a highway which has been withdrawn from public use by reason of street construction does so at his [own] peril." *Fenske v. Kramp Construction Co.* (1932), 207 Wis. 397, 241 N. W. 349.

The trial court also properly determined that the construction area was a place of employment under the safe place statute (sec. 101.01) even though the accident occurred on Labor Day, a holiday, and no workers were present. *Padley v. Lodi* (1940), 233 Wis. 661, 663, 290 N. W. 136; *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 163, 146 N. W. 2d 801.

The court then instructed that *safe* or *safety* as used in the safe place statute does not refer to absolute safety:

". . . the term safe or safety as applied to the place of employment means such freedom from danger to the life, health, safety, or welfare of employes or frequenters as the nature of the employment or place of employment will reasonably permit.

"The defendant was not required to guarantee the safety of these frequenters who used the area in question, but was required to *maintain such area as safe as the nature of the place would reasonably permit*. (Emphasis added.)

The plaintiff alleged in her complaint that the defendant was negligent in failing to provide a temporary way or detour around the protruding tie rod.

The record is clear that the plaintiff did in fact have an alternate route to the dairy store which circumvented the construction area. Under the construction contract, South 20th street was kept open for vehicular traffic, and at that point, people could walk across West Lincoln avenue. The road building project ended at South 18th street and plaintiff could also have crossed West Lincoln avenue there. More importantly, the route to these alternate crossing places was via new concrete sidewalk. The construction supervisor for the city of Milwaukee who was supervising the construction project involved here, drew a sketch of Lincoln avenue between South 18th street and South 20th street which was admitted into evidence as Exhibit 13. He testified that, based on information received from his inspector's daily reports, "The sidewalk from and including the southwest radius of South 19th and Lincoln to the east line of South 20th Street, sidewalk was poured August 13, 1964." This was also indicated on Exhibit 13, as were the dates on which each phase of the project was poured with concrete. Though the supervisor did not specifically testify as to when the sidewalks on the north side of Lincoln avenue were poured, Exhibit 13 indicates that it was also poured on August 13, 1964.

There is no specific testimony that the recently poured sidewalks were serviceable. However, the record reveals that:

(1) The supervisor for the city of Milwaukee testified that, ". . . For sidewalk, if we poured sidewalk one day, we would let people walk on it the next day or as soon as it's hard enough so it's not damaged."

(2) The sidewalk was poured 25 days before plaintiff's accident.

(3) In describing her actions just before she tripped over the tie rod, the plaintiff testified, ". . . I seen the sidewalk and I seen everything else, so I wanted to step on the sidewalk and I hitched on that rod and I went—I landed on the sidewalk."

Thus the plaintiff had an alternate route via new sidewalk to the dairy store. She could have walked on the sidewalk to South 20th or South 18th streets, crossed West Lincoln avenue, and then walked on new sidewalk to the dairy store.

As previously discussed, there were adequate warnings to the plaintiff that there was construction going on and that there might be hazards within the construction area. Defendant was not required to fence off the entire area.

Plaintiff originally alleged that the defendant was negligent in failing to remove the tie bar which plaintiff tripped over. As the trial progressed it became clear that tie bars are necessary for concrete construction and that they become permanently imbedded in the pavement. Plaintiff then modified her theory to assert that defendant was negligent in permitting the tie rod to protrude into the street instead of being flush against the curb line.

Several persons testified as to the function of a tie rod. A metal tie rod is installed for reinforcing purposes in the curb and gutter section of a roadway. It connects two adjacent slabs of concrete in order to keep the two slabs from separating so that water does not get between them and freeze in the wintertime and cause the concrete to break.

When received from the manufacturer, the rods are "L" shaped and each leg of the "L" is about 18 inches long. The rods are about one-half inch in diameter. The curb and gutter section of a roadway is made up of one solid slab of concrete. It is poured with concrete before the adjoining slab of the roadway is poured.

One leg of the "L"-shaped rod is embedded into the curb and gutter section such that it is parallel with the plane of the roadway and imbedded horizontally into the curb and gutter section. The other leg of the rod is

then flush against the long edge of the curb and gutter slab and also parallel to the grade of the road.

The tie rod must be "L"-shaped to begin with, because if it were one straight rod it would interfere with the forms or molds used to determine the shape of the edge of the gutter. After the curb and gutter section is poured with concrete, the forms will be removed within six to twenty-four hours. The tie rod will then eventually be straightened into one continuous rod of steel so that it extends into the next pour of concrete (the roadway here).

An engineer for the city of Milwaukee testified that "we may or may not at the time we remove the forms straighten out the tie rods." He also stated that normally they would not straighten out the rods until just before the next pour of concrete was to be made because road grading equipment might catch one of the straightened rods.

It is undisputed that plaintiff tripped over a rod which had been straightened and was protruding into the section of the street which had not yet been poured with concrete. According to Exhibit 13, the slab of the street which would connect with that protruding rod was not poured until ten days after the accident. Thus plaintiff asserts that since normally the rods are not straightened out until the next pour is ready, defendant was negligent in permitting the rod to protrude instead of being flush with the curb and gutter slab.

Under defendant's contract with the city the rods were placed every three feet along the curb line. Plaintiff testified that after she tripped she noticed that the other rods were all flush with the concrete. Plaintiff testified that she was watching where she was going and fell because she did not expect the rod to be sticking out there.

The defendant's foreman and the defendant's president, both, admitted that no inspection was ever made along the jobsite after the various concrete forms were removed, nor was anyone ever assigned to inspect the work and progress in general, or the tie rods in particular. Defendant justified the lack of inspections because the presence of the tie rods are to be expected when the construction is being carried out in the usual, ordinary, and customary manner, and in accordance with accepted methods of the construction industry. The city of Milwaukee engineer also testified, in essence, that the manner in which defendant carried out its construction work along West Lincoln avenue was within the purview of industry standards. Plaintiff presented no testimony that the defendant did not conform with the customs of the industry.

Plaintiff claims that even though the industry standards may have been followed, they were not sufficient for a residential area where people visited neighboring stores to shop.

Under the safe place statute, the defendant was to provide such freedom from danger to the safety of frequenters as *the nature of the place* of employment would *reasonably* permit. Defendant was not expected to guarantee the safety of persons who chose to cross the construction site. The nature of the place was a road construction project and naturally produced some dangers or hazards. That is why the road was closed to pedestrian and vehicular traffic. Defendant had no duty to put a red flag on every potential hazard that was present or to fence off the entire area. The defendant did provide a safe alternate route. The duty set by the safe place statute "is not breached merely because the place could be made safer." *De Marco v. Braund* (1966), 30 Wis. 2d 675, 680, 681, 142 N. W. 2d 165.

The plaintiff also contends that the defendant acquiesced in permitting persons to walk across the construction site. The decision of the trial court on motions after verdict indicates the trial judge believed that to be the reason the jury arrived at the verdict it did.

However, the only evidence of defendant's acquiescence was vague and indefinite testimony by the plaintiff that she observed people going to the stores on West Lincoln avenue during the period that the construction was going on: "They were crossing back and forth." "They'd cross the street." "I seen them walking every day." There was one lady in the street when the plaintiff fell. This testimony did not indicate where these other persons crossed the street. Thay may have crossed at 18th or 20th streets. There is no indication that if these other persons did cross the construction site they did so when workers were present. The defendant could hardly acquiesce if persons crossed the street after the workers had departed for the day or persons crossed on Labor Day (as the plaintiff did) when no work was being done.

While it is quite realistic to believe that residents of the area would prefer to take the shortcut across the construction area instead of walking the extra block to insure their own safety, it cannot be assumed that the defendant acquiesced in such conduct. The presence of persons in the construction area must have been continuous, frequent, and well established in order to raise an inference of acquiescence. *Grossenbach v. Devonshire Realty Co.* (1935), 218 Wis. 633, 639, 261 N. W. 742. There is no evidence that any construction worker or supervisor ever permitted or saw a resident take such a shortcut.

The defendant argues that under the facts of this case the negligence of the plaintiff was at least equal to or greater than the defendant's as a matter of law. We agree with this assertion.

Generally, the apportionment of negligence is for the jury and will not be upset except where it is manifest as a matter of law that the allocation is unreasonably disproportionate. *Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 312, 151 N. W. 2d 68. Where, however, it appears that the negligence of the plaintiff is as a matter of law equal to or greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold. *Peters v. Chicago, M., St. P. & P. R.R.* (1939), 230 Wis. 299, 301, 283 N. W. 803; *Hollie v. Gilbertson* (1968), 38 Wis. 2d 245, 250, 156 N. W. 2d 462.

The plaintiff entered the construction site at her own peril. It was obvious that the street was under construction and the plaintiff had full knowledge of this fact. There were barricades on the street closing it to travel. The accident occurred near noon on a clear, dry, sunny day. The evidence will not support a finding that the defendant acquiesced in permitting residents of the area to cross over the street construction or had knowledge of such actions by the residents. The availability of the new sidewalk provided an alternate route.

Without a showing that the defendant failed to provide an alternate route or acquiesced in or had knowledge of persons crossing the street through the construction area, it cannot be said the negligence of the defendant is greater than the negligence of the plaintiff.

The defendant also alleges that, as a matter of law, the plaintiff was a trespasser and the trial court erred in instructing the jury on the definitions of frequenters and trespassers and permitting the jury to determine the status of the plaintiff.

Since we have determined that the negligence of the plaintiff was at least equal to or greater than that of the defendant as a matter of law, we do not reach the

issue of the status of the plaintiff. Furthermore, the defendant failed to object to the instruction when given or make it the subject of motions after verdict. Pursuant to *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 515, 80 N. W. 2d 380, the defendant is precluded from raising this issue on appeal.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.