David P. BRUNETTE, Plaintiff-Appellant,†

v.

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY
OF WISCONSIN, The City of Algoma, and
Robert A. Gardner, Defendants-Respondents.

Court of Appeals

*No. 81–688. Submitted on briefs December 14, 1981.—
Decided April 27, 1982.*
(Also reported in 320 N.W.2d 43.)

† Petition to review denied.

For the appellant there were briefs by *Avram D. Berk* and *Berk, Berk & Hoida, S.C.,* of Green Bay.

For the respondent there was a brief by *Rod A. Charnholm, Bruce B. Deadman* and *Everson, Whitney, Everson, Brehm & Pfankuch, S.C.,* of Green Bay.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J.   David Brunette appeals a judgment dismissing his complaint against the City of Algoma and Robert Gardner, a city police officer, for injuries he received when Gardner's squad car struck his motorcycle during a high-speed chase. The jury found that Gardner did not intentionally strike Brunette's motorcycle. Because this finding is supported by credible evidence and is not the result of trial court error, and because we conclude that Brunette's negligence exceeds any negligence on the part of Gardner as a matter of law, we affirm.

While on duty in the City of Algoma, Gardner observed Brunette run a stop sign. Gardner turned on the flashing red lights on his unmarked squad car and proceeded after Brunette. When Brunette did not stop, Gardner turned on his siren and continued to chase Brunette through the City of Algoma. During the chase, Brunette ran numerous stop signs and reached speeds of up to seventy miles per hour. Upon learning that Gardner was in pursuit of Brunette, another Algoma police officer, William Larson, set up a roadblock with his squad car. Brunette avoided Larson's roadblock and left the city limits at a high rate of speed. Both Gardner and Larson pursued Brunette at speeds in excess of 100 miles per hour. The chase ended in southern Door County when Brunette lost control of his motorcycle as Gardner at-

tempted to pass him. As a result of the accident, Brunette sustained a broken leg and his motorcycle was damaged.

Brunette's complaint claimed alternatively that Gardner either negligently or intentionally struck him. The jury found that Gardner did not intentionally strike Brunette and that Gardner was not negligent in the operation of his squad car. The trial court directed a verdict on the question of Brunette's negligence, and the jury found that Brunette's negligence was the cause of his injuries.

The jury finding that Gardner did not intentionally strike Brunette's motorcycle with his squad car is supported by credible evidence and must therefore be accepted on appeal. *Leckwee v. Gibson,* 90 Wis. 2d 275, 284, 280 N.W.2d 186, 189–90 (1979). This court will look for evidence to sustain the jury finding, *Coryell v. Conn,* 88 Wis. 2d 310, 317–18, 276 N.W.2d 723, 726 (1979), and will consider all evidence in the light most favorable to the verdict. *Toulon v. Nagle,* 67 Wis. 2d 233, 242, 226 N.W.2d 480, 486 (1975). The jurors were presented with opposing versions of the accident. It was their responsibility to judge the credibility of the witnesses and to choose the version they wished to believe.

The proffered demonstrable evidence concerning the nature of the contact between Gardner's squad car and Brunette was cumulative and would not have aided the jury in determining the issue of intentional striking. It neither proves nor disproves the basic fact of who struck whom. This is the fact upon which the presumption of intent must be based. Brunette's claim of error for the court's failure to instruct on battery and excessive force presumes an intentional striking. The jury's finding that there was no intentional striking makes our review of this claimed error unnecessary.

364

We also do not review the remaining claimed errors relating to Gardner's negligence because we conclude that Brunette cannot recover for Gardner's negligence as a matter of law. It is the duty of the court to deny recovery when it concludes, as a matter of law, that the plaintiff's negligence is greater than that of the defendant. *Skybrock v. Concrete Construction Co.*, 42 Wis. 2d 480, 490, 167 N.W.2d 209, 214 (1969). Brunette's negligence is greater than Gardner's negligence because Brunette intentionally and without cause placed himself in a position of known danger. The fact that there was substantial risk inherent in Brunette's conduct would be apparent to any ordinarily prudent person.

Brunette does not dispute that he intentionally fled from Gardner and Larson. By his own admission, he could have stopped at any time after he was aware that Gardner wanted him to stop. He nevertheless continued to flee, at grossly excessive and unsafe speeds. He knew, or should have known, that his actions involved a substantial risk of injury, not only to innocent members of the public, but also to himself and to the pursuing police officers. We see no difference between Brunette's conduct and the conduct of other individuals to whom the court has denied recovery for intentional and unjustified exposure to a known risk. *See Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 744, 218 N.W.2d 279, 287 (1974) (farmer worked on farm machinery with power takeoff engaged) ; *Gross v. Denow*, 61 Wis. 2d 40, 50, 212 N.W.2d 2, 8, (1973) (pedestrian chose route used by vehicles instead of routes used only by pedestrians and failed to keep a proper lookout) ; *Skybrock*, 42 Wis. 2d at 490, 167 N.W.2d at 214 (pedestrian walked through barricaded construction site) ; *Rewolinski v. Harley-*

*Davidson Motor Co.,* 32 Wis. 2d 680, 684–85, 146 N.W.2d 485, 487 (1966) (watchman elected to crawl through window to enter room instead of waiting for key); *Kornetzke v. Calumet County,* 8 Wis. 2d 363, 368–69, 99 N.W.2d 125, 128 (1959) (driver failed to reduce speed while driving through dense fog); *McNally v. Goodenough,* 5 Wis. 2d 293, 304, 92 N.W.2d 890, 897 (1958) (workman walked through dark hallway); *Klein v. Montgomery Ward & Co.,* 263 Wis. 317, 321, 57 N.W.2d 188, 190 (1953) (patron walked over wire in store aisle when other clear passageways were available); *Lepak v. Farmers Mutual Automobile Insurance Co.,* 262 Wis. 1, 4–5, 53 N.W.2d 710, 712 (1952) (passenger left safe position in truck knowing it would lurch forward).

By denying recovery to Brunette, the court furthers a necessary state policy of encouraging traffic violators to submit to lawful arrests. While we recognize that high-speed chases raise other public policy concerns such as injury to the public, this case does not involve an injury to an innocent third party. In this case, Brunette seeks to recover for his own intentionally wrongful conduct. He should be penalized, not rewarded, for his lawless conduct, which created a situation of imminent danger of serious bodily harm to himself and to others. The fact that the pursuing officers may have been outside their jurisdiction at the time of Brunette's injury is irrelevant. A traffic violator who knowingly risks injury by grossly excessive and dangerous speed while attempting to avoid arrest does not reacquire a right to recover simply by avoiding arrest until he or she has passed an often unmarked jurisdictional boundary. Brunette's possibly correct speculation on the jurisdiction of the pursuing officers does not justify his conduct, and this court will not hold that it gives rise to a right of recovery.

*By the Court.*—Judgment affirmed.

DEAN, J. (concurring). I join in the majority opinion except as it reaches the overbroad holding that its decision "furthers a necessary state policy of encouraging traffic violators to submit to lawful arrests." [Majority opinion p. 365]. The majority opinion chooses not to inform its readers of the issue that Brunette raises. Brunette draws the court's attention to sec. 66.31, Stats., which authorizes municipal police officers to engage in "fresh pursuit" beyond the border of their municipality. Brunette argues that because the statute authorizes pursuit to adjoining municipalities, the statute only authorizes such pursuit into physically contiguous municipalities and implicitly does not authorize pursuit to farther municipalities. Brunette reasons that the police exceeded their jurisdiction; i.e., pursued him without acting under color of law, in pursuing him beyond the townships adjoining Algoma. Brunette concludes that the trial court committed prejudicial error when it permitted the case to be tried on the assumption that Officer Gardner was acting under color of law.

The majority opinion suggests that it would accept Brunette's hypertechnical reading of sec. 66.31; I would not. In enacting sec. 66.31, the legislature clearly intended to authorize municipal peace officers to act beyond the traditional border of their jurisdiction. The purpose of the extended jurisdiction is specific: It permits the officer to act in "fresh pursuit." Breaking the only municipal boundary that has any meaning to the municipal officer, the statute functions to permit the completion of a pursuit, if possible. Brunette's strained and literal reading of the statute to end the pursuit, whether completed or not, at the next municipal border outside the officer's home municipality makes the statute dysfunctional. I would choose to reject this result in favor of the better reading, which authorizes pursuit until completion or abandonment.

Instead of rejecting Brunette's wrongheaded statutory construction, the majority opinion articulates an overbroad statement of public policy. The policy is overbroad because, if applied, it would justify denying recovery in cases where an officer intentionally injures a party who fails to submit to an arrest. Even though the jury found that Robert Gardner did not intentionally hit Brunette, that finding is merely a circumstance in this case. Nothing in the logic of the policy suggests that the policy is not applicable in other cases where intentional injury occurs.

The majority opinion consistently overstates the appropriateness of its policy in the context of this case. The majority states that its policy is to promote lawful arrest; yet, it admits that the officer acted without jurisdiction. If the officer was without jurisdiction, the lawfulness of the arrest is doubtful.

The majority opinion states that Brunette seeks to recover for his intentionally wrongful conduct. Brunette seeks to recover for his injuries. Such wrongful conduct should not bar recovery because such conduct may not be causally related to the injuries or because in other circumstances the hitting may be intentional.

The majority reasons that any jurisdictional limit on the officer's authority is irrelevant. If officers who act without jurisdiction are acting uulawfully, the question of jurisdiction must be relevant to a policy promoting "lawful" arrests.

The majority speculates that the jurisdictional boundaries were unmarked. The majority would suppose that the officers did not know when they left their city and county. It is far more reasonable to believe the officers knew the boundaries and continued the pursuit to completion in spite of passing into other jurisdictions.

The majority states: "[T]his court will not hold that ... [Brunette's possible correct speculation on the juris-

diction of the pursuing officers] gives rise to a right of recovery." [Majority opinion p. 365]. This statement misstates the majority's holding. In actuality the majority holds that Brunette's acts preclude a right of recovery regardless of any jurisdictional defect undermining the municipal police officer's right to act.

The majority opinion disposed of the remaining claimed errors when it held that Brunette's negligence exceeded Gardner's as a matter of law because Brunette intentionally and without cause placed himself in a position of known danger. The policy of denying recovery to promote arrest is unnecessary to the outcome of the decision. I join in the majority opinion, except for this last, unnecessary and overbroad exercise of judicial lawmaking.