Lisa M. PETERS, individually and as Personal
Representative of the Estate of Brian C. Peters,
deceased, and Dean R. Rohde as Guardian ad Litem
for Jared L. Peters, Mandi J. Peters and Kristen M.
Peters, Plaintiffs-Appellants,

v.

MENARD, INC., Defendant-Respondent,

ASSOCIATED INDEMNITY CORPORATION, Defendant,

ADVANCED PRIVATE INVESTIGATIONS, Defendant-
Respondent,

SCOTTSDALE INSURANCE COMPANY, Defendant.

Supreme Court

*No. 97–1514. Oral argument October 7, 1998.—Decided
March 2, 1999.*

(Also reported in 589 N.W.2d 395.)

174

For the plaintiffs-appellants there were briefs by *Susan M. Glasser, Dean R. Rohde* and *Bye, Goff Rohde, Ltd.*, River Falls and oral argument by *Dean R. Rohde*.

For the defendant-respondent, Menard, Inc., there was a brief by *Webster A. Hart, Stephanie L. Finn* and *Herrick, Hart, Duchemin, Spaeth, Sullivan & Schumacher, S.C.*, Eau Claire and oral argument by *Webster A Hart.*

For the defendant-respondent, Advanced Private Investigations, there was a brief by *William F. Bauer, Kirtt E. Godager* and *Coyne, Niess, Schultz, Becker & Bauer, S.C.*, Madison and oral argument by *William F. Bauer.*

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1995–96).[1] Brian Peters' estate and family members filed a wrongful death action in La Crosse County against Menard, Inc. (Menard), Advanced Private Investigations (API), and their insurers, alleging negligence. Peters drowned while fleeing API security guards after allegedly shoplifting a drill from Menard's store. The circuit court, Judge Dennis G. Montabon presiding, entered summary judgment in favor of defendants API and Menard, finding that they were immune from liability under subsection (3) of Wisconsin's retail theft statute, Wis. Stat. § 943.50. The court also determined that "no reasonable fact finder could conclude on these facts that the defendants in this case are more than 50 percent or 51 percent negligent." Motion Hearing Tr., Mar. 13, 1997 at 17.

¶ 2. In its certification to this court, the court of appeals framed the issue as whether a merchant or its agents are immune from liability under Wis. Stat. § 943.50(3) for actions taken while attempting to detain a suspected shoplifter by pursuing him or her off of the merchant's premises.[2] We hold that § 943.50(3) provides immunity to a merchant or its agents for actions taken while attempting to detain a person, including pursuit, as long as the statute's three "reasonableness" requirements are met: (1) there is

---

[1] All future references to the Wisconsin Statutes will be to the 1995–96 version unless otherwise stated.

[2] Although this issue was the one posed in the court of appeals' certification, this court granted the certification and accepted the appeal for consideration of all issues raised in the court of appeals. *See* Order Granting Certification, Mar. 17, 1998 at 1.

reasonable cause to believe that the person violated § 943.50; (2) the detention and the actions taken in an attempt to detain are "reasonable in manner"; and (3) the detention and the actions taken in an attempt to detain last only for a "reasonable length of time." § 943.50(3).

¶ 3.   We do not decide whether the three "reasonableness" requirements were met in this case because we uphold the circuit court's grant of summary judgment on a different ground. Namely, we hold that summary judgment was warranted because Peters' negligence exceeded any possible negligence of the defendants as a matter of law. Therefore, we affirm the circuit court's entry of summary judgment in favor of Menard and API.

## I.

¶ 4.   On May 5, 1994, Chad Wright, an employee of API, was working as a plain clothes security guard at Menard's La Crosse, Wisconsin, store. He observed a person he later identified as Brian Peters take a box containing a drill off of a shelf. Wright saw Peters place the box into his shopping cart and push the cart through an exit door located in the carpet department. The door led to Menard's lumber yard, where Wright continued to watch Peters. Peters pushed the cart to a parked truck and placed the drill box into the back seat of the truck's extended cab. He then returned the cart to the store, walked back to the truck, and sat down in the back seat.

¶ 5.   Wright flagged down one of Menard's lumber yard employees and asked him to watch Peters. Wright went into a back office of the store and reported his observations to Dean King, the store manager. King

instructed Wright to keep him informed. After their brief conversation, Wright went back outside.

¶ 6. When he returned to the lumber yard, Wright saw two other people get into the truck. The truck proceeded to another area of the yard to pick up materials and then drove toward the guard shack to exit the yard. Dan Kind, another API employee, was stationed at the guard shack. Wright asked Kind to perform his normal check-out duties while Wright approached the truck.

¶ 7. Wright walked to the truck and asked to speak with the rear seat passenger, Brian Peters. When Peters got out of the truck, Wright identified himself and asked about the drill. Wright could see the drill box, which appeared to be open, in the truck's back seat.[3] According to the driver of the truck, Wright's tone of voice clearly indicated that he was upset.

¶ 8. Peters denied any knowledge of a stolen drill. According to Wright, Peters kept "dodging the issue." Wright Dep. at 38–39. Wright eventually requested that Peters take the box and accompany him

---

[3] Although the record is unclear, there may have been an orange "Menards" sticker on the drill box, which would indicate that the drill had been paid for. Apparently, two identical drill boxes were found in the back of the truck after the incident. The driver of the truck stated in his deposition that just two days prior to the incident in this case, his brother, Jim, had bought a drill from Menards identical to the one Peters allegedly shoplifted. In addition, the driver himself had owned the same model of drill for approximately two years before the incident. Only one of the boxes found in the truck had an orange "Menards" sticker on it and only one of the boxes had a drill in it. It is not clear from the record whether the box containing the drill was the one which bore the sticker.

back into the store to speak with the store manager. At that point, Peters took off running.

¶ 9. Wright shouted at Peters to "stop," but Peters continued running. Peters sprinted across Menard's premises to Monitor Street, traveled west on Monitor, and ran up onto an embankment. Wright ran after Peters, closing within ten feet of Peters at times. When Wright reached the top of the embankment, he dove at Peters, but missed him. According to Wright, his intent in diving at Peters was to stop him.

¶ 10. After the dive, Wright fell down. When he got up again, Peters was almost to the point at which the bike path intersects the embankment. Wright began running again, but at a much slower pace. According to Wright, he was tired and was simply trying to see where Peters was going. At that moment, Wright noticed for the first time that Dan Kind was coming across Monitor Street. Wright slowed to a walk to wait for Kind.

¶ 11. According to Wright, Kind took over the pursuit at that point, and Wright lagged behind. Kind followed Peters onto the bike path, where he chased Peters for about 100 yards. Throughout the chase, both guards shouted "stop" repeatedly at Peters, to no avail. Kind followed as Peters exited the path and ran down an embankment and into the woods. About fifteen to twenty yards into the woods, Kind dove or fell toward Peters but never made contact with him.[4]

---

[4] Wright thought that he witnessed Kind dive at Peters, but Kind stated in his deposition that he merely slipped and fell in the direction of Peters. Whether or not Kind's action was an attempted dive, it is uncontested that Kind never touched Peters.

¶ 12.  After Kind's fall, Wright and Kind terminated their pursuit.[5] According to Kind, the chase had gone on for about seven minutes. Peters continued to run into a flooded marsh area toward the swollen La Crosse River, while Wright and Kind walked back to the bike path and stood there talking. Wright later stated that he knew that the marsh area was flooded and thought that Peters would eventually make his way back to them. After a few seconds, however, Wright heard splashing. The guards ran to the flooded area and Wright saw Peters enter the flooded La Crosse River.

¶ 13.  According to Wright, both guards were "stunned" that Peters would jump into the river. Wright Dep. at 49. When Peters attempted to swim across the river, however, the guards yelled words of encouragement to Peters and attempted to get him to grab onto a fallen tree. Peters did try to grab a downed tree near the other side of the flooded river. Unfortunately, the fast-moving current swept Peters back to the river's middle, where he went underwater.

---

[5] In their depositions, both security guards elaborated on their reasons for undertaking the chase in the first place. Wright stated that he pursued Peters in order to identify Peters as the person he observed shoplifting the drill. According to Wright, his purpose was to achieve a detention so that he could "present Peters to a law enforcement officer." Wright Dep. at 52. In addition, although Wright did not actually observe the drill or its box on Peters' person, he thought that the box he observed in the truck had been opened and expressed concern that Peters may try to discard the drill during the chase. Kind stated that he had followed Wright because he had been taught in his police science training that he was always to assist an officer in a chase for safety reasons.

¶ 14. Kind and Wright both entered the flooded river to try and save Peters. Wright positioned himself on a fallen tree downstream in the hopes that he could grab Peters as Peters was carried by. Peters bobbed up and down in the rushing river. The last time Wright saw Peters surface, he was within ten feet of Wright. Kind swam to the area where Peters last went underwater. Kind dove underwater several times in search of Peters but was unable to find him.

¶ 15. Peters' estate, widow, and children brought a wrongful death suit against Menard, API, and their insurers, alleging that the negligent conduct of the Menard and API employees caused Peters' death.[6] Defendants Menard and API both filed motions for summary judgment which were granted by the circuit court, Judge Dennis G. Montabon presiding, during a hearing on March 13, 1997.

¶ 16. The circuit court specified two grounds for its grant of summary judgment to defendants Menard and API. First, the circuit court ruled that defendants were immune from liability pursuant to Wis. Stat. § 943.50(3). The court found that the Menard and API employees had reasonable cause to believe that Peters shoplifted the drill. The court also found that the security guards' actions were reasonable under the circumstances of the case and that there was "no dispute as to any material fact regarding that [issue]." Motion Hearing Tr., Mar. 13, 1997 at 16.

¶ 17. Second, the circuit court determined that Peters' negligence was equal to or greater than any

---

[6] Both Peters' widow and his children asserted that Peters' death deprived them of Peters' "services, society, companionship and consortium." Am. Compl. at 3. In addition, Peters' widow claimed damages including loss of marital property.

negligence which could be placed upon defendants. The court stated:

> [N]o reasonable fact finder could conclude on these facts that the defendants in this case are more than 50 percent or 51 percent negligent. The act is the wrongful death of Mr. Peters. That was caused by his actions. The undisputed facts show that the chase was — basically was completed and then they heard [Peters] splashing and tried to save him from his contributory negligence of jumping into a flooded river. I think to say otherwise borders on ludicrous. . . . If [a fleeing suspect] chooses to jump in the water and drown, that's very unfortunate, but it's not the fault of the defendants.

Motion Hearing Tr., Mar. 13, 1997 at 17. Accordingly, in a written order filed April 16, 1997, the circuit court dismissed the complaint.

¶ 18. The court of appeals certified the plaintiffs' appeal to this court, pursuant to Wis. Stat. (Rule) § 809.61. In its certification, the court of appeals stated, "the question we certify is whether a merchant or the merchant's employees and agents may be immune from civil or criminal liability under § 943.50(3), Stats., when their attempt to 'detain' a person suspected of retail theft includes pursuit of that person to a place other than the merchant's establishment." Certification at 3. In granting the certification, this court accepted review of all issues raised before the court of appeals.

## II.

¶ 19. We begin by addressing the certified question: whether a merchant or its agents are immune from liability under Wis. Stat. § 943.50(3) (reprinted

below)[7] for actions taken while attempting to detain a suspected shoplifter by pursuing him or her off of the merchant's premises. This issue requires that we interpret the meaning of the word "detain" in Wis. Stat. § 943.50(3). Statutory interpretation is a question of law which this court reviews *de novo. Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 271, 580 N.W.2d 233 (1998). We benefit, however, from the analyses of the circuit court and court of appeals. *Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 70, 556 N.W.2d 697 (1996).

¶ 20.    The primary goal of statutory interpretation is to determine the legislature's intent. *Miller*, 219 Wis. 2d at 271; *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 632, 547 N.W.2d 602 (1996). First, we examine the plain language of the statute. *Miller*, 219 Wis. 2d at 271. When reasonable minds could attribute more than one meaning to a word or phrase in the statute, the word or phrase is ambiguous. *State v.*

---

[7] Wis. Stat. § 943.50(3) provides:

**(3)**   A merchant, a merchant's adult employe or a merchant's security agent who has reasonable cause for believing that a person has violated this section in his or her presence may detain the person in a reasonable manner for a reasonable length of time to deliver the person to a peace officer, or to his or her parent or guardian in the case of a minor. The detained person must be promptly informed of the purpose for the detention and be permitted to make phone calls, but he or she shall not be interrogated or searched against his or her will before the arrival of a peace officer who may conduct a lawful interrogation of the accused person. The merchant, merchant's adult employe or merchant's security agent may release the detained person before the arrival of a peace officer or parent or guardian. Any merchant, merchant's adult employe or merchant's security agent who acts in good faith in any act authorized under this section is immune from civil or criminal liability for those acts.

*Sweat*, 208 Wis. 2d 409, 416, 561 N.W.2d 695 (1997); *UFE v. LIRC*, 201 Wis. 2d 274, 283, 548 N.W.2d 57 (1996). In that case, we resort to extrinsic aids such as the statute's history, purpose, scope and context to discern the intent of the legislature. *Miller*, 219 Wis. 2d at 271; *Sweat*, 208 Wis. 2d at 415, 417; *UFE*, 201 Wis. 2d at 281–82. In addition, we employ rules of statutory construction to give meaning to the statutory language. *UFE*, 201 Wis. 2d at 283.

¶ 21.  The plain language of Wis. Stat. § 943.50(3) allows "[a] merchant, a merchant's adult employe or a merchant's security agent who has reasonable cause for believing that a person has violated this section in his or her presence" to "detain the person in a reasonable manner for a reasonable length of time to deliver the person to a peace officer. . . ." § 943.50(3). Section 943.50(3) provides immunity from civil or criminal liability to "[a]ny merchant, merchant's adult employe or merchant's security agent who acts in good faith in any act authorized under this section." § 943.50(3). It is clear from this language that immunity from liability for detaining a person exists only when three "reasonableness" requirements are met. *See Miller*, 219 Wis. 2d at 271–73; *Hainz v. Shopko Stores, Inc.*, 121 Wis. 2d 168, 173, 359 N.W.2d 397 (Ct. App. 1984). These requirements are: (1) there must be reasonable cause to believe that the person violated § 943.50; (2) the manner of the detention and the actions taken in an attempt to detain must be reasonable; and (3) the length of time of the detention and the actions taken in an attempt to detain must be reasonable. *See* § 943.50(3). *See also Miller*, 219 Wis. 2d at 271–73; *Hainz*, 121 Wis. 2d at 173.

¶ 22.  The language of the statute does not clarify, however, the particular steps which may be taken by a

185

merchant or its agents in order to effect a detention. The word "detain" is not defined in Wis. Stat. § 943.50(3) and the statutory text provides few clues as to its meaning. As this case exemplifies, "detain" may reasonably be understood to mean only the holding of a person or it may be interpreted as including any of a number actions taken to stop a person in order to hold him or her. Therefore, we conclude that the word "detain" in § 943.50(3) is ambiguous. Accordingly, we look to extrinsic aids for evidence of the intent underlying § 943.50(3).

¶ 23.   This court must presume that the legislature intends for a statute to be construed in a manner that furthers the statute's underlying purpose. *Verdoljak*, 200 Wis. 2d at 635. The purpose of Wis. Stat. § 943.50(3) is to provide merchants with a mechanism for protecting themselves against shoplifters while safeguarding customers' liberty interests. *See Johnson v. K-Mart Enters., Inc.*, 98 Wis. 2d 533, 541, 297 N.W.2d 74 (Ct. App. 1980). It surely must have occurred to the legislature that for a variety of reasons, including guilt and fear of public humiliation, many suspected shoplifters would be unwilling to stop and submit to detention upon a merchant's verbal requests. In such situations, the legislature must have envisioned that merchants would take steps, including pursuing a suspect, in order to achieve a detention. A reasonably conducted pursuit would not violate customers' rights in any way. Without the ability to pursue, however, merchants would have no meaningful way to protect themselves from any suspected shoplifters who chose to simply ignore the merchant and walk away. The purpose of the statute would be defeated.

186

¶ 24.   Further, when the legislature enacts a statute, it is presumed to do so with full knowledge of the existing law. *See City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 183–84, 532 N.W.2d 690 (1995). Section 120A of the Restatement (Second) of Torts existed when Wis. Stat. § 943.50 was enacted in 1969. *See* ch. 254, Laws of 1969; Restatement (Second) of Torts § 120A (1964). Section 120A provides:

> One who reasonably believes that another has tortiously taken a chattel upon his premises, or has failed to make due cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts.

Restatement (Second) of Torts § 120A (1964). There is a caveat to § 120A, which reads, "The Institute expresses no opinion as to whether there may be circumstances under which this privilege may extend to the detention of one who has left the premises but is in their immediate vicinity." Restatement (Second) of Torts § 120A caveat (1964). There is also a comment on the caveat, part of which states, "[T]he Caveat is intended to leave open the question whether the privilege extends to the detention of one who has left the premises but is still in their immediate vicinity, as, for example, where the person suspected has gone out of the door of a shop, and is half-way across the sidewalk on the way to his [or her] car." Restatement (Second) of Torts § 120A caveat, cmt. i (1964).

¶ 25.   Although § 120A of the Restatement contains language expressly restricting merchants to detentions "on the premises," Wis. Stat. § 943.50(3) contains no such phrase. Both the caveat and the spe-

cific example given in the comment would lead one to believe that Wisconsin's legislature was alert to the possibility that detentions could occur off of the merchant's premises due to a merchant's pursuit of a suspected shoplifter off of the store premises. The legislature's conspicuous omission from § 943.50(3) of the Restatement's "on the premises" language plainly suggests that the legislature intended to allow merchants to follow suspected shoplifters off of the store's premises in order to detain them.

¶ 26. The context of Wis. Stat. § 943.50(3) also suggests that the legislature intended for "detain" to include pursuit. An examination of other subsections of § 943.50 reveals that evidence of "intent to deprive the merchant permanently of possession, or the full purchase price, of the merchandise" is a necessary element of retail theft. § 943.50(1m). Under subsection (2) of § 943.50, "[t]he intentional concealment of unpurchased merchandise which continues. . .beyond the last station for receiving payments in a merchant's store" constitutes evidence of this "intent to deprive." § 943.50(2). It is common knowledge that the checkout stations in many stores are located at or near the stores' outside doors or boundaries. In such situations, reasonable cause for believing that a person violated § 943.50(1m) would not arise until the person left the store premises. If the legislature did not intend to allow merchants to follow or pursue suspects off of store premises in order to detain them, merchants in stores with such checkout station locations may have a hard time developing this reasonable cause and thereby obtaining the right to detain persons suspected of retail theft under § 943.50(1m). It is unlikely that the legislature intended for § 943.50(3) to provide merchants with so little protection in such a common scenario.

¶ 27. Additional support for our conclusion is provided by the rule that "where a statute would change the common law, the legislative intent to change the common law must be clearly expressed." *Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 859, 470 N.W.2d 888 (1991) (internal quotation omitted). We have already determined that the legislature did not clearly express its intent in § 943.50(3) as to the word "detain," nor did it clearly express any intent to change the common law. Section 943.50(3) was derived from the merchant's common law right to stop and detain, but not to arrest, suspected shoplifters believed to have committed misdemeanors. *State v. Lee*, 157 Wis. 2d 126, 129, 458 N.W.2d 562 (Ct. App. 1990). Plaintiffs' counsel acknowledged upon questioning during oral argument that the pursuit in this case would have been permitted under the common law as long as there was reasonable cause to believe that Peters had shoplifted. We agree that the common law permitted the pursuit in this case, provided that the three "reasonableness" requirements of the statute were met. Therefore, we conclude that the legislature intended that the pursuit be allowed under § 943.50(3).

¶ 28. Finally, public policy supports a construction of "detain" which would include pursuit. This court will not adopt statutory constructions which lead to absurd or unreasonable results. *Verdoljak*, 200 Wis. 2d at 636. A decision by this court denying immunity under Wis. Stat. § 943.50(3) to merchants or their agents who pursue suspected shoplifters while attempting to detain them would have at least two adverse effects on society. First, it would strip merchants of much of their ability to recover shoplifted merchandise and apprehend shoplifters. Shoplifting is a widespread societal problem. A failure to catch shop-

lifters would likely result in merchants raising their prices to make up for increased losses of stolen goods. Second, shoplifters, knowing that merchants could not pursue them, would be encouraged to dash out of stores with their stolen loot as fast as their legs could carry them. The potential would increase for injuries to innocent shoppers caused by fleeing shoplifters. *See generally Liability of Storekeeper for Injury to Customer Arising Out of Pursuit of Shoplifter*, 14 A.L.R.4th 950 (1982) (discussing cases from around the United States which involved customers injured by fleeing shoplifters). Indeed, this court has already encountered a case involving a store customer who was injured when a fleeing shoplifter collided with her. *See Radloff v. National Food Stores, Inc.*, 20 Wis. 2d 224, 226, 121 N.W.2d 865 (1963). In short, a ruling by this court that "detain" does not include pursuit would invite shoplifters to flee and increase the risk of harm to merchants and innocent customers. This court will not adopt a ruling which would create such an undesirable risk.

¶ 29.  Plaintiffs contend that even if Wis. Stat. § 943.50(3) sanctions pursuit of suspects on the merchant's premises, it does not in any circumstances allow pursuit of suspects off of the store's premises. Neither the statute nor case law provides a basis for a rule which per se prohibits pursuit off of a merchant's premises, and we decline to impose one. As we have already pointed out, both the context of the statute and section 120A of the Restatement (Second) of Torts suggest that the legislature intended to permit pursuit off of the premises. Wisconsin Stat. § 943.50(3) limits the amount of pursuit via its three "reasonableness" requirements. We find these "reasonableness" require-

ments to be sufficient to prevent any potential for abuse by merchants of the ability to pursue suspects.

¶ 30.   We hold that Wis. Stat. § 943.50(3) provides immunity to a merchant or its agents for actions taken while attempting to detain a person, including pursuit, as long as the statute's three "reasonableness" requirements are met. The "reasonableness" requirements are: (1) there must be reasonable cause to believe that the person violated § 943.50; (2) the manner of the detention and the actions taken in an attempt to detain must be reasonable; and (3) the detention and the actions taken in an attempt to detain must continue for only a reasonable length of time. *See* § 943.50(3). In light of our decision that the circuit court's grant of summary judgment may be upheld on the ground that Peters' negligence, as a matter of law, exceeded any negligence which could be placed upon the defendants, we decline to decide whether the circuit court was correct in holding that the three "reasonableness" requirements were met in this case.

III.

¶ 31.   Next, we determine whether the summary judgment may be upheld on the ground that Peters' negligence exceeded any negligence which could be placed on defendants, as a matter of law. In reviewing a grant of summary judgment, we are to apply the same standards used by the circuit court in making its initial decision. *Verdoljak*, 200 Wis. 2d at 630; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). These standards are contained in Wis. Stat. § 802.08(2), which provides that the circuit court shall enter a summary judgment "if the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). *See also Verdoljak*, 200 Wis. 2d at 630; *Green Spring Farms*, 136 Wis. 2d at 315.

¶ 32.    Four elements must exist for a plaintiff to maintain a cause of action for negligence: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995) (citations omitted). In Wisconsin, every person owes a duty of care to the entire world to refrain from conduct which foreseeably could cause harm to others. *Miller*, 219 Wis. 2d at 260. In addition, "[e]very person in all situations has a duty to exercise ordinary care for his or her own safety." Wis JI—Civil 1007. *See also Murawski v. Brown*, 51 Wis. 2d 306, 314, 187 N.W.2d 194 (1971); *Frederick v. Hotel Invs., Inc.*, 48 Wis. 2d 429, 435, 180 N.W.2d 562 (1970); *Johnson v. Grzadzielewski*, 159 Wis. 2d 601, 608, 465 N.W.2d 503 (Ct. App. 1990). As this court stated in *Miller*:

> A person fails to exercise ordinary care, when, without intending to do any harm, he or she does something or fails to do something under circumstances in which a reasonable person would foresee that by his or her action or failure to act, he or she will subject a person or property to an unreasonable risk [of] injury or damage.

*Miller*, 219 Wis. 2d at 261 (quoting Wis JI—Civil 1005).

¶ 33. A plaintiff whose negligence is greater than the negligence of any defendant cannot recover damages for that defendant's negligence. Wis. Stat. § 895.045(1). Generally, the allocation of negligence is a question for the trier of fact. *Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 744, 218 N.W.2d 279 (1974). However, when it is apparent to the court that the plaintiff's negligence is, as a matter of law, greater than any negligence on defendant's part, it is the court's duty to so hold. *See id.*; *Gross v. Denow*, 61 Wis. 2d 40, 49, 212 N.W.2d 2 (1973); *Johnson*, 159 Wis. 2d at 608. *See also* § 895.045(1).[8]

¶ 34. Public policy considerations can also preclude the imposition of liability on a defendant, even where it has been proven that negligence was a cause-in-fact of the injury. *Miller*, 219 Wis. 2d at 264. This court has identified six public policy reasons for denying recovery:

---

[8] We note that since the plaintiffs' loss of consortium claims are derivative, any contributory negligence on Peters' part is imputed to the plaintiffs. *See White v. Lunder*, 66 Wis. 2d 563, 574, 225 N.W.2d 442 (1975). In addition, under the doctrine of respondeat superior, Menard and API are responsible for the negligent conduct of their employees while the employees were acting within the scope of their employment. *See Shannon v. City of Milwaukee*, 94 Wis. 2d 364, 370, 289 N.W.2d 564 (1980).

We also note that the parties dispute whether the claims of Peters' children are valid since Peters' spouse survived him. *See Hanson v. Valdivia*, 51 Wis. 2d 466, 475, 187 N.W.2d 151 (1971) (stating that surviving children cannot bring an action for wrongful death of one of their parents when the other parent survives). As we uphold the summary judgment against the plaintiffs on negligence grounds, we do not address this argument.

(1) The injury is too remote from the negligence; or (2) The injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Id.* at 265 (quoting *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979)); *see also Coffey v. Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976). Whether public policy considerations will result in nonliability is a question of law for the court to decide. *Rockweit*, 197 Wis. 2d at 425.

¶ 35.   The court of appeals has applied these principles in two cases similar to the instant case. In *Johnson v. Grzadzielewski*, the court of appeals upheld the circuit court's grant of summary judgment to the defendants, who included the manufacturer and the installer/maintainer of an elevator. *Johnson*, 159 Wis. 2d at 605–07. The plaintiff in *Johnson* was injured after he tampered with the elevator in order to increase its speed and then tried to crawl out the top hatch of the elevator when it stopped. *Id.* The court of appeals held that the plaintiff was barred from recovery under Wis. Stat. § 895.045 because his contributory negligence was greater than that of any defendant. *Id.* at 605, 609. The court reasoned that the plaintiff breached his duty of ordinary care for his own safety by taking the actions which caused his injuries. *Id.* at 608–09.

¶ 36.   The court in *Johnson* also based its decision on the public policy grounds that plaintiff's injury was

too remote from the negligence and was completely out of proportion to the culpability of the defendants. *Id.* at 609. Further, the court expressed concern that it would enter an area for which there would be no sensible stopping point if it allowed the plaintiff to recover. *Id.* at 610. The court stated, "This court cannot allow the claim under circumstances in which an injured party was the major cause of his own injuries." *Id.*

¶ 37. In an earlier case, the court of appeals dealt with a factual scenario even more like the one in the present case. *See Brunette v. Employers Mutual Liability Insurance Company*, 107 Wis. 2d 361, 320 N.W.2d 43 (Ct. App. 1982). The plaintiff in *Brunette* sued a city and one of its police officers for injuries he received when the police officer struck the plaintiff's motorcycle following a high-speed chase. *Brunette*, 107 Wis. 2d at 362–63. The chase ensued after the plaintiff ran a stop sign and refused to pull over when the police officer attempted to stop him. *Id.* The court of appeals affirmed the circuit court's dismissal of the plaintiff's complaint, holding that the plaintiff's negligence exceeded the police officer's negligence as a matter of law. *Id.* at 362, 364. The court of appeals reasoned that the plaintiff "intentionally and without cause placed himself in a position of known danger. The fact that there was substantial risk inherent in [the plaintiff's] conduct would be apparent to any ordinarily prudent person." *Id.* at 364. The court stated:

> [The plaintiff] does not dispute that he intentionally fled from [the police officers]. By his own admission, he could have stopped at any time after he was aware that [the police officer] wanted him to stop. He nevertheless continued to flee, at grossly excessive and unsafe speeds. He knew, or should have known, that his actions involved a substantial risk

of injury, not only to innocent members of the public, but also to himself and the pursuing police officers. We see no difference between [the plaintiff's] conduct and the conduct of other individuals to whom the court has denied recovery for intentional and unjustified exposure to a known risk.

*Id.* at 364 (citing numerous cases in which the court denied recovery to a plaintiff whose own negligent conduct precluded recovery).

¶ 38.   The court of appeals also cited public policy reasons for its decision in *Brunette*. *See id.* at 365. The court stated, "By denying recovery to [the plaintiff], the court furthers a necessary state policy of encouraging traffic violators to submit to lawful arrests. . . .[The plaintiff] should be penalized, not rewarded, for his lawless conduct, which created a situation of imminent danger of serious bodily harm to himself and to others." *Id.*

¶ 39.   In the present case, the circuit court found that Peters' negligence exceeded any negligence which could be placed on Menard and API as a matter of law. We agree. In intentionally and voluntarily entering the La Crosse River, Peters failed to exercise ordinary care for his own safety. The substantial risk inherent in jumping into a plainly flooded river with fast-moving current would be apparent to an ordinarily prudent person. Any such person would recognize that the river was of unknown depth due to the flooding and had a swift current. It is well known that entering rushing waters can result in serious injuries or drowning. Likewise, Peters knew, or should have known, that his decision to get into the river to evade the security guards involved a substantial risk that he would be seriously injured or would drown. Like the plaintiff in

*Brunette*, Peters "placed himself in a position of known danger" by attempting to escape detainment in a risky and unsafe way. *Brunette*, 107 Wis. 2d at 364. We conclude that Peters' unreasonable and dangerous behavior constituted a clear and extreme breach of his duty of care for his own safety.

¶ 40.  The conduct of the security guards was far less culpable by comparison, if it was culpable at all. The guards, like everyone, had a duty to refrain from acts or omissions which foreseeably could cause harm to others. *See Miller*, 219 Wis. 2d at 260. The guards' actions, however, were taken entirely in response to Peters' own conduct. There is no evidence that the guards threatened Peters with harm or used any type of force. It is undisputed that the guards never touched Peters and that they abandoned their pursuit before they reached the flooded river. The guards could not have foreseen that Peters would go to such dangerous lengths to escape from them, especially after they quit pursuing him. Moreover, the guards both subjected themselves to substantial risk of harm by entering the river themselves in an attempt to rescue Peters from the peril he created.[9] There is no question that even if any negligence could be attributed to the security guards, it does not even come close to the much greater negligence exhibited by Brian Peters. Therefore, we hold that Peters' negligence exceeded any negligence which could be placed on defendants as a matter of law.

---

[9] In general, a person attempting to make a rescue is not negligent if the one to be rescued "was actually in imminent danger of death or injury," the person "acted as a reasonably prudent person" in making the choice to attempt the rescue, and "in carrying out the rescue attempt, the person used ordinary care with respect to the means and manner of making the rescue." Wis JI—Civil 1007.5.

¶ 41. We also base our decision on public policy grounds. Peters' injury is remote from any negligence of the security guards and is completely out of proportion to any possible culpability on their parts. Peters drowned as a result of his own conduct. It was Peters who chose to take off running, Peters who chose the route, Peters who chose to continue running despite the guards' requests that he stop, and Peters who chose to go into the river. Any negligence on the guards' parts was not a significant factor in Peters' injury, if it was a factor at all.

¶ 42. Moreover, allowing recovery in this case would enter a field with no sensible stopping point. Suspected shoplifters who fled could recover from merchants and security companies for any injuries suffered while being pursued by security guards. This court does not wish to reward fleeing suspects who unreasonably place themselves in danger while attempting to get away from merchants and their security agents by allowing them to recover from the merchant and security company afterward. The preferable policy is to encourage suspected shoplifters to submit to lawful detentions by merchants and their agents.

¶ 43. Therefore, we hold that plaintiffs are barred from recovery pursuant to Wis. Stat. § 895.045(1) because Peters' negligence exceeded any negligence which could be placed upon defendants, as a matter of law. In addition, we conclude that plaintiffs are barred from recovery as a matter of law on public policy grounds.

¶ 44. Our holding that defendants are entitled to judgment as a matter of law, however, is not sufficient by itself to uphold the circuit court's grant of summary judgment in defendants' favor. In order for summary

judgment to be appropriate, we must also find that there is no genuine issue as to any fact material to our determination. *See* Wis. Stat. § 802.08(2); *Verdoljak*, 200 Wis. 2d at 603; *Green Spring Farms*, 136 Wis. 2d at 315. All of the facts we have cited in our comparative analysis of the relative negligence of Peters and the security guards are uncontested. Most importantly, it is undisputed that Peters jumped into the flooded river intentionally and upon his own volition after the security guards had ended their pursuit. Nevertheless, plaintiffs' counsel would have us assume that Peters jumped into the river because he felt threatened by the allegedly angry manner of the guards. Even if we so assume, the fact remains that Peters, of his own volition, intentionally entered the river. Accordingly, we conclude that there is no genuine issue as to any fact material to our comparison of negligence in this case.

■■■

¶ 45. We hold, therefore, that the plaintiffs are barred from recovery as a matter of law pursuant to Wis. Stat. § 895.045 because, as a matter of law, Peters' negligence exceeded any possible negligence on defendants' parts. Plaintiffs are also barred from recovery on public policy grounds. Because we also hold that there are also no genuine issues as to any material facts, we affirm the circuit court's grant of summary judgment in favor of Menard and API.

## IV.

¶ 46. In sum, we conclude that § 943.50(3) immunizes a merchant or its agents from civil or criminal liability for actions taken while attempting to detain a person, including pursuit, as long as the statute's three "reasonableness" requirements are met. These three requirements are: (1) there must be reasonable cause

to believe that the person violated § 943.50; (2) the detention and the actions taken in an attempt to detain must be "reasonable in manner"; and (3) the detention and the actions taken in an attempt to detain must continue for only a "reasonable length of time." § 943.50(3).

¶ 47.   We do not decide whether the three "reasonableness" requirements were met in this case because we uphold the summary judgment for a different reason. We conclude that as a matter of law, Peters' negligence exceeded any negligence which could be attributed to defendants. We also hold that public policy considerations prevent plaintiffs from recovering. Therefore, we affirm the circuit court's grant of summary judgment in favor of Menard and API.

*By the Court.*—The judgment of the circuit court is affirmed.