Laura VENERABLE, individually, and
as Special Administrator of the
Estate of Devin L. Venerable,
Plaintiff,

v.

Bryan N. ADAMS and All Sports Bar & Grill, Inc.,
Defendants,

INSUREMAX INSURANCE COMPANY,
Defendant-Appellant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Cross Claimant-Respondent.

Court of Appeals

*No. 2008AP2188. Submitted on briefs March 3, 2009.
—Decided April 28, 2009.*

2009 WI App 76

(Also reported in 767 N.W.2d 386.)

784

786

On behalf of the defendant-appellant, the cause was submitted on the brief of *Robert F. Johnson* and *Robin S. Jacobs* of *Cook & Franke S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert W. Zillmer, Jr.* of Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. InsureMax Insurance Company appeals from an order reserving its right to appeal from the trial court's denial of its motion seeking summary judgment on coverage. InsureMax contends the trial court should have ruled that its policy did not provide coverage because the "deemed permission" rule set forth in *Arps v. Seelow*, 163 Wis. 2d 645, 472 N.W.2d 542 (Ct. App. 1991), does not apply to the facts of this case, and because the car, as it was being used when the accident occurred here, does not qualify as an insured car under InsureMax's insurance policy. Because InsureMax's policy did not provide coverage for the car under the

787

specific circumstances in this case, we reverse the order and direct the trial court to grant judgment to Insure-Max.

## BACKGROUND

¶ 2. InsureMax provided a personal automobile insurance policy to John Q. Adams, Jr., for the policy period November 8, 2006 to May 8, 2007. The policy insured John's 1990 Buick Regal, which he used for transportation to and from work. On March 6, 2007, John rented a Mercury Grand Marquis from Dollar Rent-A-Car for about two weeks. He needed the vehicle during this time because his son, Bryan Adams, a member of the United States Army stationed in Hawaii, was coming home to get married. While Bryan was home, John would use the rental car to drive back and forth to work and leave the Buick Regal for his wife to use while Bryan was home. It is undisputed that John did not rent the Mercury for Bryan to use. John is the only listed and authorized driver on the rental agreement and Bryan's driver's license had been suspended. John did not want Bryan driving until he got his license reinstated.

¶ 3. On March 6, 2007, John picked Bryan up at the airport and brought him home. On March 7, 2007, John drove the Mercury to work. When John returned home, he spoke briefly to Bryan, and went to bed. After John was asleep, Bryan took the Mercury and went out with some friends. Bryan did not ask John for permission to drive the Mercury and John was not aware that Bryan was using the Mercury that night. At approximately 1:00 a.m. on March 8, 2007, Bryan lost control of the rental vehicle and crashed into a building. The crash killed one passenger, Devin L. Venerable, who was ejected from the front passenger seat, and injured the two others who were sitting in the back seat.

788

¶ 4. Devin and his mother, Loretta Venerable, carried personal automobile insurance through American Family Mutual Insurance Company. Loretta filed suit individually, and on behalf of Devin's estate, against Bryan, InsureMax and American Family. American Family paid its underinsured policy limit of $100,000 to the Estate of Devin Venerable. The Estate then assigned its claims against Bryan and InsureMax to American Family. American Family sought contribution from Insure-Max, alleging the insurance policy it issued to John also covered Bryan while he was driving the rental car at the time of the accident.

¶ 5. InsureMax filed a motion seeking summary judgment, asserting that Bryan was not an insured person and that the rental car involved in the accident did not qualify as an insured vehicle under its policy. American Family opposed the motion, arguing that Bryan was a relative and an adult resident of John's home and therefore, was an insured person under the InsureMax policy who, pursuant to *Arps*, could give himself permission to use the rental car.

¶ 6. The trial court conducted a hearing on the motion on May 19, 2008. At the conclusion of the hearing, the trial court held that Bryan was a member of John's household and an insured person under the policy. The trial court reasoned that based on *Arps*, as an adult resident of John's household, Bryan could give himself permission to use the rental car. On this basis, the trial court denied InsureMax's motion seeking summary judgment. The trial court did not specifically rule on whether the rental vehicle constituted an insured vehicle under the policy. It found that it did not need to reach that issue. The trial court entered an order ruling that the InsureMax policy provided insurance coverage to Bryan for the March 8, 2007 accident. On August 29, 2008, the

parties entered into a stipulation and order dismissing the case, reserving InsureMax's right to appeal the summary judgment decision, and granting judgment to American Family against InsureMax for the amount of the policy limits under InsureMax's policy. InsureMax now appeals.

## I. Standard of Review

¶ 7. The challenged ruling in this case arises following the trial court's decision on a summary judgment motion. Our review in cases on appeal from summary judgment is well-known. We review orders for summary judgments independently, employing the same methodology as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We shall affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 8. A motion for summary judgment may be used to address issues of insurance policy coverage. *See Calbow v. Midwest Sec. Ins. Co.*, 217 Wis. 2d 675, 679, 579 N.W.2d 264 (Ct. App. 1998). This case involves interpretation of an insurance contract where the facts are undisputed. Such interpretation also calls for our independent review. *See Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. Our primary objective in interpreting the policy is to ascertain and carry out the intent of the parties. *See Peace ex rel.*

790

*Lerner v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 120–21, 596 N.W.2d 429 (1999). The language in the policy is interpreted according to its plain and ordinary meaning as would be understood by a reasonable insured. *Id.* at 121. When interpreting an insurance policy, any ambiguity should be construed against the insurance company; but in the absence of any ambiguity, we must not construe a policy to include coverage not agreed to by the parties. *See Londre by Long v. Continental W. Ins. Co.*, 117 Wis. 2d 54, 57, 343 N.W.2d 128 (Ct. App. 1983). Finally, interpretation of the statute and applying it to an undisputed set of facts also presents a question of law, which we review independently. *See Hometown Bank v. Acuity Ins.*, 2008 WI App 48, ¶ 7, 308 Wis. 2d 503, 748 N.W.2d 203.

## II. The Pertinent Policy Language

¶ 9. The InsureMax policy provides in pertinent part:

**COVERAGE A – LIABILITY COVERAGE INSURING AGREEMENT**

**We** will pay damages for **bodily injury** . . . for which an **insured person** is legally liable because of the ownership or use of **your insured car** or a **non-owned car** . . . .

. . . .

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

As used in this Part, "**insured person**" means:

(1) **you**, a **relative** or **resident**.

(2) any person using **your insured car** with express permission from **you** or an adult member of **your** household.

791

. . . .

As used in this Part, **"insured person"** means with respect to a **non-owned car** only **you**, a **relative** or a **resident**.

. . . .

**EXCLUSIONS**

**We** do not provide coverage for **bodily injury** or **property damage**:

. . . .

(16) arising out of the use of:

(a) **your insured car** by a person without express permission from **you** or an adult member of **your** household; or

(b) other than **your insured car** by any person without the owner's express permission.

(Bolding in original.)

¶ 10. The policy also provides the following definitions for use throughout the policy:

(2) **"You"** and **"your"** mean the Name Insured in the Declarations and spouse if living in the same household.

(10) **"Non-owned car"** mean a **car** used by **you** with the express permission of the owner and not owned by, furnished, or available for the regular use of **you**, a **relative** or a **resident**.

(15) **"Relative"** means a person living in **your** household and related to **you** by blood, marriage or adoption, including a ward or foster child.

(16) **"Resident"** means a person, other than a **relative**, living in **your** household.

792

(19) "**Your insured car**" means:

(a) the **car** owned by **you** described in the Declarations.

(b) a **car** you acquire during the policy period that replaces the **car** described in the Declarations. It will have the same coverages as the **car** it replaced with the exception of Car Damage Coverage. If you want coverage to apply to the replacement **car you** must notify **us** within 30 days of the date **you** acquire it.

. . . All insurance for the **car** being replaced is ended when **you** take delivery of the replacement **car.**

(c) a **car you** acquire during the policy period if it is in addition to any **car** described in the Declarations. **We** will provide the same coverages, exclusive of Car Damage Coverage, that **we** currently provide for any **car** shown on the Declarations.

These provisions apply only if, on the date **you** acquired the additional **car**, **we** insure all cars **you** own and **you** ask **us** to insure the additional **car** within 30 days of the date **you** acquire it.

(d) any substitute **car** or **utility trailer** not owned by **you**, a **relative**, or a **resident** being temporarily used by **you** with the express permission of the owner. The **car** must be a substitute for another **car** covered which is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

(Bolding in original.)

## III. Was the Rental Car—While Being Operated by Bryan—an Insured Vehicle Under the InsureMax Policy?

¶ 11. Before addressing this issue, we note that InsureMax is not appealing from the trial court's ruling

that Bryan qualified as an "insured person" under the policy at issue here because he was a relative living in the household. In the trial court, InsureMax argued that Bryan was not a resident of his parent's home because he was just visiting there. The trial court ruled otherwise and InsureMax does not challenge the ruling. Accordingly, for the purpose of this appeal, we assume, without deciding, that Bryan was an "insured person" under the InsureMax policy.

¶ 12. InsureMax makes two arguments for us to consider in this appeal: (1) the trial court erred in extending the "deemed permission" rule of *Arps* to Bryan under the facts of this case; and (2) there is no coverage because the rental car while being operated by Bryan was not an "insured car" under the InsureMax insurance policy. We address each argument in turn.

¶ 13. It was undisputed in this case that Bryan did not have express permission to drive the rental car, either from his father or from Dollar. The trial court, however, ruled that as an adult resident of the household, Bryan could give himself permission to drive the car based on *Arps* and the omnibus statute, Wis. Stat. § 632.32(3)(a).

¶ 14. The omnibus statute, Wis. Stat. § 632.32(3)(a) (2007–08)[1] requires an insurance policy to provide "any person" with the same coverage the named insured has when that other person is "using any motor vehicle described in the policy *when the use is for purposes and in the manner described in the policy*." (Emphasis added.) The purpose of the statute is to make sure that accident victims are afforded insur-

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

ance coverage. *See Nordahl v. Peterson*, 68 Wis. 2d 538, 551, 229 N.W.2d 682 (1975).[2]

■

¶ 15. In *Arps*, Andrea Fountain, an adult member of Frederick Seelow's household, took the Thunderbird automobile he owned, without his permission. *Id.*, 163 Wis. 2d at 647. She was involved in an accident with the vehicle resulting in fatalities. *Id.* Seelow carried automobile insurance on the Thunderbird with American Family Mutual Insurance Company. *Id.* We held in *Arps* that: "The combination of secs. 632.32(3)(a) (the omnibus coverage clause) and 632.32(5)(a), Stats. (the permissive use limitation), requires coverage of any person using the vehicle with permission of an adult member of the insured's household." *Id.* at 649.[3] Because Fountain was an adult member of Seelow's household, we held that American Family must provide coverage to her, based on the broad construction of the omnibus statute that "adult members of the household

[2] We note that the accident victim in this case was afforded $100,000 in insurance coverage from American Family. The $25,000 InsureMax policy limit is sought here by American Family to effectively reduce the $100,000 it paid to $75,000, not to compensate the accident victim.

[3] WISCONSIN STAT. § 632.32(3)(a) provides: "Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy."

WISCONSIN STAT. § 632.32(5)(a) provides in pertinent part: "A policy may limit coverage to use that is with the permission of the named insured or, if the insured is an individual, to use that is with the permission of the named insured or an adult member of that insured's household other than a chauffeur or domestic servant . . . ."

must be deemed capable of giving themselves permission to drive." *Id.* Thus, *Arps* declared what is referred to as the "deemed permission" rule. That is, as an adult resident of Seelow's household, Fountain could give herself permission to drive the Thunderbird, owned by Seelow and insured by American Family. *Id.*

¶ 16. InsureMax contends that the deemed permission rule in *Arps* should not be applied to Bryan because the facts in Bryan's case involve a vehicle which was *not* identified in the insurance policy and extends coverage for a risk that InsureMax never intended, nor could have identified. We agree with InsureMax. The rule enunciated in *Arps* addressed a situation where the vehicle involved was owned by the named insured and was an insured car under the American Family Insurance policy issued to Seelow. *Id.* at 647. We decline to extend the deemed permission rule to cover the particular circumstances in Bryan's case, where the vehicle involved is not owned by the named insured, and where the rental car, while being driven by Bryan, is not a vehicle that is described in the policy.

¶ 17. We have extended the deemed permission rule of *Arps* to the specific situation "in which an insurer knowingly insures cars that are owned by corporation employees or officers and are used for family, nonbusiness purposes." *Home Ins. Co. v. Phillips*, 175 Wis. 2d 104, 113, 499 N.W.2d 193 (Ct. App. 1993) ("[T]he owner of a car should be treated as the named insured for the purpose of awarding third-party coverage . . . when the named insured is a corporation and the insurer knows that the automobiles are owned by its employees and are used by the employees' families for personal purposes."). In *Phillips*, we extended coverage to Kevin Rench, who crashed a Mazda automobile, owned by his father, Quentin Rench, and in-

sured under a Home Insurance commercial automobile policy which listed Racine Industries as the named insured. *Id.* at 107. Quentin Rench was the president and CEO of Racine Industries. *Id.* The Mazda was listed under the policy as a covered auto and Kevin Rench was listed as the driver of the Mazda. *Id.* Under this factual scenario, it is not hard to comprehend why Home Insurance was found to provide coverage.

¶ 18. The facts in Bryan's case, however, are quite different from both *Arps* and *Phillips*. American Family seeks to extend coverage in a situation where an adult resident of the household crashes a rental car: (1) that he was not authorized to drive; (2) that he took without the express permission of either the owner of the car (Dollar) or the lessee of the car (John); (3) where the named insured in the insurance policy under which coverage is sought is not the owner of the car involved in the accident; and (4) where the adult resident who crashed the car is not a named insured under the insurance policy at issue. We conclude that extending coverage under the specific facts and circumstances here is not required by *Arps* or by the omnibus statute, and that under the plain language of the InsureMax policy, coverage should not be extended to Bryan for the accident in this case.

¶ 19. First, we are not convinced that the deemed permission rule of *Arps* should be extended to afford coverage to Bryan while operating the rental vehicle which he did not rent or have express permission to drive, and was not owned by his father. Second, we hold that the omnibus statute, even when applied broadly, does not extend coverage to Bryan under the factual scenario presented here. The omnibus statute, as noted above, requires coverage, under the InsureMax policy,

797

to extend to Bryan when he is "using any motor vehicle described in the policy *when the use is for purposes and in the manner described in the policy.*" Thus, for the omnibus statute to require coverage, two factors must be met: (1) the motor vehicle operated by Bryan must be a "motor vehicle described in the policy"; and (2) the use of the rental vehicle must be "for purposes and in the manner described in the policy." Neither factor is present in this case.

¶ 20. The rental vehicle, while being operated by Bryan, was not a motor vehicle described in the policy. The InsureMax policy covers liability arising from the use of *your insured car* or a *non-owned car.* The term "your insured car" is defined in section 19 of the policy. Section (19)(a) refers to the car described in the Declarations. This would be *only* the 1990 Buick Regal, as it was the only car described in the Declarations. Section (19)(b) refers to a "car you acquire . . . that replaces the car described in the Declarations." American Family contends that the rental car falls under this provision because the rental car was intended to replace the 1990 Buick Regal for the two weeks Bryan was home. We reject this argument based on the qualifying language in section (19)(b) that: "All insurance for the car being replaced is ended when you take delivery of the replacement car." The only reasonable interpretation of section (19)(b), then, when read together with the qualifying language is that this section applies when an insured is permanently replacing the car named in the Declarations, and thus, no longer needs to carry insurance on that car because a new replacement car has been acquired.

¶ 21. Section 19(c) refers to a car acquired "in addition to any car described in the Declarations" and requires the insured to ask for insurance on the ac-

798

quired car "within 30 days." American Family argues this provision applies to the facts and circumstances because the rental car was being driven in addition to the Buick Regal. We do not agree that this section applies. First, the insured failed to give the required notice of acquisition of the rental car. Second, when read in context with the other provisions of this section, *acquire,* as used here, does not mean *temporarily* acquire, but rather *permanently* acquire. If we were to interpret this as American Family suggests, the 30–day notice requirement would be meaningless. The rental car was not a car John intended to pay premiums for or add to his insurance policy.

¶ 22. Finally, Section 19(d) refers to a substitute car being temporarily used when your regular covered car: "is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction." This section does not apply as the 1990 Buick Regal was still available to be used. Based on the plain language of the sections discussed here, we conclude that the Bryan's use of the rental car does not satisfy any of the definitions of "your insured car."

¶ 23. Next, we examine the definition of "non-owned car." The policy defines the term "non-owned car" as "a **car** used by **you** with the express permission of the owner and not owned by, furnished, or available for the regular use of **you**, a **relative** or a **resident**." This definition can be broken down into three parts: (1) the car must be used by "you"; *and* (2) you must be using the car with the express permission of the owner; *and* (3) the car must *either* (a) not be owned by you, a relative or a resident, *or* (b) not be furnished for the regular use of you, a relative or a resident *or* (c) not be available for the regular use of you, a relative or a resident.

799

¶ 24. Here, Bryan does not satisfy parts (1), (2) and (3)(a). As to part (1), the policy defines "you" as the named insured and the spouse if living in the same household. As applied here, "you" means only John, as the named insured, or John's wife. "You" does not mean Bryan. As to part (2), the car must be used with *the express permission of the owner.* The owner of the rental car is Dollar and Dollar did not give Bryan express permission to drive its car. As to part (3)(a), neither John nor his wife are the owners of the rental car.[4] Thus, based on the definition set forth in the policy, when being used by Bryan, the rental car does not satisfy the requisites of a "non-owned car" as that term is used in the policy.

¶ 25. Because the rental car, when being driven by Bryan, does not constitute "your insured car" or "a non-owned car," it is not an insured car under the InsureMax policy and therefore the InsureMax policy does not provide coverage to Bryan for the accident in this case.

¶ 26. Further, the InsureMax policy plainly excludes the rental vehicle being operated by Bryan from being an insured vehicle under the facts and circumstances in this case. Thus, there is no coverage under the policy on this basis as well. It is also based on this exclusion that we conclude the second factor of the omnibus statute is not present under the factual scenario of this case—that is the use of the rental vehicle was not "for purposes and in the manner described in the policy." *See* Wis. Stat. § 632.32(3)(a).

---

[4] Because the language of part (3) of the provision is set forth in the disjunctive, we need not discuss parts (3)(b) or (3)(c). *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

¶ 27. Exclusion (16)(b) excludes liability arising from the use of a vehicle "other than **your insured car** by any person without the owner's express permission." We have already concluded that the rental car was not "your insured car." Thus, the vehicle was something other than "your insured car." This provision excludes liability under the policy for damages arising from the use of an "other vehicle" if the person using the other vehicle did not have the "owner's express permission." It is undisputed that Bryan did not have the *owner's express* permission. Again, the owner of the rental car was Dollar. Dollar did not give Bryan express permission to drive the rental vehicle. Therefore, coverage is excluded under this provision of InsureMax's policy.

### CONCLUSION

¶ 28. In sum, we conclude that the rental vehicle being driven by Bryan does not satisfy the definition of an insured vehicle under the plain language of the InsureMax policy, that the *Arps* "deemed permission" rule should not be extended to apply under the facts of this case, and an exclusion in the InsureMax policy operates to bar coverage. Accordingly, the trial court erred in denying InsureMax's motion seeking summary judgment on coverage. We reverse and remand to the trial court with directions to grant judgment on coverage in favor of InsureMax.

*By the Court.*—Order reversed and cause remanded with directions.