NORTHERNAIRE RESORT & SPA, LLC,
Plaintiff-Respondent,†

v.

NORTHERNAIRE CONDOMINIUM ASSOCIATION, INC.,
Defendant-Appellant.

Court of Appeals

*No. 2012AP1707. Submitted on briefs May 14, 2013.
—Decided September 17, 2013.*

2013 WI App 116

(Also reported in 839 N.W.2d 117.)

† Petition for Review Pending.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jonathan B. Levine* of *Law Firm of Jonathan B. Levine*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark A. Sauer* of *Mallery & Zimmerman*, Wausau.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. MANGERSON, J. The issue in this case is whether Northernaire Resort & Spa, LLC ("Northernaire"), is entitled to one vote for each of its sixty-three unbuilt units at meetings of the Northernaire Condominium Association, Inc. ("the Association"). As the condominium is comprised of 108 units, this would effectively give Northernaire control of the Association.

¶ 2. Based on WIS. STAT. § 703.15(4)(d)1. and the condominium declaration, we conclude Northernaire is entitled to a single vote for each constructed unit it owns.[1] It is not entitled to vote on behalf of units that do not meet the declaration's definition of a "unit"—a portion of a structure designed and intended for residential use.

¶ 3. Northernaire may be entitled to an additional vote if it is the assignee of the declarant. We remand for the circuit court to determine whether Northernaire is entitled to that vote, and for further proceedings on the remainder of the claims in this case.

## BACKGROUND

¶ 4. Northernaire of Deer Lake, LLC, recorded a condominium declaration on August 30, 2006. The

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

declaration subjected land in Oneida County to a 108–unit condominium. Only forty-five units have been constructed.

¶ 5. The declaration's voting provisions establish that, except for the declarant, only owners of a physical unit are entitled to vote in the Association's affairs. Section 2. of Article III, entitled "Membership and Voting Rights," creates two classes of voting membership. A "Class A" member is the fee title owner of a unit and is entitled to one vote for each unit owned. "Unit" is a defined term, and means "any portion of a structure situated upon the [property subject to the declaration] designed and intended for use and occupancy as a residence by a single family . . . ." The "Class B" membership consists only of the declarant, who is entitled to a single vote, regardless of the number of units owned. The declaration sets this Class B vote to expire the earlier of ten years from the date the first unit is sold, thirty days after seventy-five percent of the units are sold, or when terminated by the declarant in writing.

¶ 6. The condominium encountered financial trouble and, in 2009, the unsold interests in the condominium property were transferred in lieu of foreclosure to M&I Regional Properties, LLC. An Assignment and Acceptance of Declarant's Rights accompanied the transfer. Under the assignment, M&I obtained all of the declarant's right, title and interest. Northernaire purchased the property from M&I in June 2010, but it is not clear whether Northernaire also obtained M&I's rights as declarant.

¶ 7. The relationship between Northernaire and the Association became contentious almost immediately. In its counterclaim, the Association alleges that Northernaire exploited the Association by taking control of governance functions, spending money inappro-

159

priately, failing to conduct sufficient assessments to fund future obligations, neglecting development and repair obligations, and comingling funds. At some point, Northernaire apparently relented and ceded control of the Association to the unit owners, leaving just a few hundred dollars in the Association's accounts. This prompted the new board to impose a special assessment.

¶ 8. Northernaire filed a three-count complaint on October 11, 2011. First, it alleged it was entitled to vote the shares of the sixty-three unbuilt units as well as seven constructed units it owned, and sought an order confirming that it was, in effect, entitled to control the Association. Second, Northernaire wanted the Association to make repairs to three of Northernaire's units. Third, Northernaire sought $75,000 for several loans it purportedly made to the Association, though no loan documents were attached to the complaint.

¶ 9. The complaint was accompanied by a motion for an ex parte restraining order prohibiting the Association from holding an annual meeting scheduled for October 22, 2011. Shane Swiderski, one of Northernaire's principals, averred that he had requested a special meeting in advance of the annual meeting, but was rebuffed. He claimed the Association was required to hold this special meeting under its bylaws, but had refused to recognize Northernaire's right to vote the shares of its unbuilt units.

¶ 10. On October 12, the circuit court set the motion for a hearing and granted Northernaire's request for a temporary restraining order. At the hearing, the Association stipulated that it would not hold any meetings for the purpose of altering the declaration or bylaws. Based on this stipulation, the court denied Northernaire's request for a restraining order.

¶ 11. Northernaire then filed a motion for declaratory judgment on the issue of voting rights. It succinctly summarized the parties' disagreement as "whether the undeveloped units owned by [Northernaire] have the same voting rights as the developed units." Following a hearing, the court, citing *Saddle Ridge Corp. v. Board of Review for Town of Pacific*, 2010 WI 47, 325 Wis. 2d 29, 784 N.W.2d 527, concluded that Northernaire could vote on behalf of its unbuilt units, and granted the motion. The Association appeals.[2]

## DISCUSSION

¶ 12. Northernaire inartfully labeled its motion before the circuit court as one for declaratory judgment, but the motion is better described as one for summary judgment. Declaratory judgment enables "controversies of a justiciable nature to be brought before the courts for settlement and determination prior to the time that a wrong has been threatened or committed." *Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976). This allows a court to take jurisdiction at a point earlier in time than it could under ordinary remedial rules and procedures. *Id.* Here, the alleged wrong—the Association's refusal to honor Northernaire's votes—supposedly occurred before the suit was filed. The proper procedural mechanism for obtaining a pretrial decision on a claim is summary judgment, and that is what we perceive Northernaire to have been requesting.

---

[2] We granted leave to appeal a non-final order on September 18, 2012. The circuit court's order has been stayed pending appeal.

¶ 13. We review a grant of summary judgment de novo. *H & R Block E. Enters., Inc. v. Swenson*, 2008 WI App 3, ¶ 11, 307 Wis. 2d 390, 745 N.W.2d 421 (Ct. App. 2007). Our methodology is the same as the circuit court's. *Id.* Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 14. Northernaire claims it is entitled to one vote for each of its unbuilt units. It relies on WIS. STAT. § 703.02(15), which defines a "unit" for purposes of the Condominium Ownership Act. Under the statute, a "unit" is "a part of a condominium intended for any type of independent use, including one or more cubicles of air at one or more levels of space or one or more rooms or enclosed spaces located on one or more floors, or parts thereof, in a building."[3] This definition includes unconstructed units designated in a condominium declaration. *See Aluminum Indus. Corp. v. Camelot Trails Condo. Corp.*, 194 Wis. 2d 574, 582–83, 535 N.W.2d 74 (Ct. App. 1995). Quite simply, Northernaire argues the declaration's definition of "unit," which limits that term to a structure, is too narrow, and violates § 703.02(15).

¶ 15. To resolve this perceived conflict between the declaration and the Condominium Ownership Act,

---

[3] Northernaire seems to misunderstand the nature of WIS. STAT. § 703.02(15). Northernaire claims that subsection "provides that unit owners may cast votes as provided in the Declaration." Subsection 703.02(15) does no such thing; it is merely a definitional statute. The statute governing voting is WIS. STAT. § 703.15(4)(d)1., and, as we shall explain, it does indeed look to the declaration to allocate those rights among the unit owners.

we must interpret both texts. Interpretation and application of a statute to an undisputed set of facts are questions of law that we review de novo. *Solowicz v. Forward Geneva Nat'l, LLC*, 2010 WI 20, ¶ 13, 323 Wis. 2d 556, 780 N.W.2d 111. Interpretation of a written document affecting land is also a question of law that we review independently of the circuit court. *Id.*

¶ 16. The condominium declaration is the operative instrument that creates a condominium, so we begin there. *See id.*, ¶ 15 (citing WIS. STAT. § 703.09). As we have explained, only owners of a physical unit—a "structure" situated on the condominium property and intended for residential use—are entitled to vote in Association affairs. These "Class A" members receive one vote per unit owned.

¶ 17. The Condominium Ownership Act largely defers to the declaration to determine voting rights in an association. WISCONSIN STAT. § 703.15(4)(d)1. provides, "At meetings of the association every unit owner is entitled to cast the number of votes appurtenant to his or her unit, as established in the declaration under [WIS. STAT. §] 703.09(1)(f)." Section 703.09(1)(f), in turn, requires a condominium declaration to specify "the number of votes at meetings of the association of unit owners appurtenant to each unit."

¶ 18. Because the statute permits the declaration to allocate voting interests, there really is no conflict between the two authorities. The circuit court should have concluded that the declaration controls, under which only owners of a structural unit are entitled to vote.

¶ 19. The circuit court did not view this as a voting case, though. Instead, it proclaimed that "the heart of the disagreement is really what constitutes a unit." This imprecise issue framing led the circuit court

to rely on *Saddle Ridge,* a case that did not address condominium voting rights.

¶ 20. The issue in *Saddle Ridge* was whether the declarant was properly assessed property taxes due on units that were declared and platted but not constructed at the time of assessment. *Saddle Ridge,* 325 Wis. 2d 29, ¶ 2. The declarant argued the unbuilt parcels were not taxable as units because the condominium declaration defined a "unit" as " 'that part of a building' within the 'interior surfaces of the perimeter walls.' " *Id.,* ¶¶ 47, 50. Instead, the declarant asserted the unbuilt properties should be taxed to the other owners as common elements. *Id.,* ¶ 47.

¶ 21. The supreme court's analysis primarily centered on the condominium taxation statute, Wis. Stat. § 703.21(1). That statute deems a unit and its percentage interests in the common elements a parcel subject to separate assessments and taxation by each taxing authority. Citing Wis. Stat. § 703.30(4), the court concluded that the statutory definition of a unit—which does not require a building—trumped the declaration.[4] In other words, for taxation purposes under § 703.21(1), what is taxable as a "unit" is set by statute, not by the declaration.

¶ 22. In reaching this conclusion, the court observed that *Aluminum Industries* laid the foundation for its decision. There, the issue was whether "condominium property on which no construction had taken place constituted 'units' for purposes of the statutory assessment for common expenses, not for purposes of property tax." *Saddle Ridge,* 325 Wis. 2d 29, ¶ 60. The

---

[4] Wisconsin Stat. § 703.30(4) states, "If there is any conflict between any provisions of any condominium instruments or any provisions of any bylaws and any provisions of this chapter, the provisions of this chapter shall control."

applicable assessment statute required common expenses to be paid by unit owners in proportion to their percentage interests in the common elements "or as otherwise provided in the declaration." *Aluminum Indus.*, 194 Wis. 2d at 581 (citing Wis. Stat. § 703.16(2)). Thus, § 703.16(2) permits the declaration to set forth an assessment scheme that differs from the default statutory rules.

¶ 23. The *Aluminum Industries* court foreshadowed *Saddle Ridge*'s holding when it observed that the statutory definition of "unit" "[c]learly and unambiguously . . . includes condominium land intended for construction but on which construction has not been started or completed." *Aluminum Indus.*, 194 Wis. 2d at 583. However, that observation was not the crux of the decision. Even if the statutory definition of "unit" included land intended for construction, "Aluminum would be relieved of [its assessment obligations under Wis. Stat. § 703.16(2)] if the specific declaration for this condominium provided that fees and assessments were only chargeable to constructed units." *Id.* at 585–86. The court's examination of the declaration confirmed that the pertinent documents did "otherwise provide" that properties would not be assessed prior to construction of dwelling units. *Id.* at 586.

¶ 24. By contrast, the separate taxation provision in Wis. Stat. § 703.21 does not provide the flexibility of the assessment statute. *Saddle Ridge*, 325 Wis. 2d 29, ¶ 62. As the court explained, "Each unit and its percentage interest in the common elements is a tax parcel and is separately taxed. The declaration is not free to alter this 'separate taxation' provision." *Id.*

¶ 25. The upshot of *Aluminum Industries* and *Saddle Ridge* is that though the statutory definition of a "unit" controls, it may be altered by other statutory

165

provisions that look specifically to the declaration to define the substantive rights and obligations of unit owners. Because the assessment statute in *Aluminum Industries* looked to the declaration for guidance, the statutory definition of "unit" was of little significance. *See generally Aluminum Indus.*, 194 Wis. 2d 574 (relieving owners of unconstructed units of their assessment obligations despite statutory definition of "unit"). However, the taxation statute at issue in *Saddle Ridge* did not allow such deviation, and therefore units were taxed according to the statutes' directive. *See Saddle Ridge*, 325 Wis. 2d 29, ¶ 62.

¶ 26. Here, the voting statute, WIS. STAT. § 703.15(4)(d)1., explicitly allows the declaration to determine the number of votes appurtenant to each platted unit. The declaration must include this information. *See* WIS. STAT. § 703.09(1)(f). The declaration in this case gives "Class A" members—owners of constructed units—one vote per unit owned. It also gives "Class B" members —the declarant—one vote, which expires or may be voluntarily surrendered. There is no provision authorizing the owner of an unconstructed unit to vote.[5]

¶ 27. Recognizing the difficulty the voting statute presents to its case, Northernaire suggests an alternative interpretation. Northernaire wishes us to read WIS. STAT. § 703.15(4)(d)1. to say: "At meetings of the association every unit owner is entitled to cast the number of votes *belonging* to his or her unit as established in

---

[5] At best, the declaration is silent about how many votes the owners of unbuilt units receive. However, in light of the multiple voting classes established by the declaration, we have no trouble interpreting the absence of voting rights in the declaration as an unambiguous indication that unconstructed unit owners are to have no decision-making power in the Association's affairs.

the declaration under WIS. STAT. § 703.09(1)(f)." Northernaire believes reading the statute in this way would not allow the declaration to "limit which type of units may vote." Essentially, Northernaire claims that the statute sets a baseline of one vote, which the declaration may then increase.

¶ 28. This is not a plausible reading of the statute. WISCONSIN STAT. § 703.15(4)(d)1. leaves it entirely to the declaration to establish the number of votes appurtenant to each unit.[6] To hold that § 703.15(4)(d)1. gives every statutory unit owner at least one vote would effectively rewrite the statute, which we will not do. *See State v. Martin*, 162 Wis. 2d 883, 907, 470 N.W.2d 900 (1991) ("Our task is to construe the statute, not to rewrite it by judicial fiat."). We see nothing in the statute that would prevent a declarant from excluding certain classes of owners from voting. This may make the units unattractive to buyers, but that does not make the practice legally impermissible.[7]

¶ 29. Although Northernaire is not entitled to vote on behalf of unbuilt units, it may be entitled to vote as the declarant. The Association's "Class B" membership consists of the declarant, who is entitled to a single vote. Under both the declaration and WIS. STAT.

---

[6] As Northernaire concedes, the applicable statutes "merely allow[] the Declaration to set forth how many votes each unit owner may cast."

[7] Of course, the desirability of the property can be affected by other provisions in the declaration. Here, for example, the Association observes that "the owner of an unbuilt unit does not contribute to the assessments for common expenses—which include insurance, landscaping, snow plowing, reserves, maintenance costs, etc." "In other words," writes the Association, "an owner of an unbuilt unit that is not paying into the coffers of the Association, should not be entitled to vote in Association matters, which in large part relate to the expenditure of funds."

§ 703.09(4), a declarant may assign his or her rights and obligations as declarant. Portions of the record suggest that Northernaire is an assignee of the original declarant, although we were unable to locate an assignment of declarant's rights from M&I to Northernaire in the appellate record. We therefore remand for the circuit court to determine whether Northernaire is an assignee of the declarant.

¶ 30. If the circuit court determines that Northernaire is the assignee of the declarant, the court will also need to determine whether Northernaire is entitled to a "Class B" vote. The declaration states that the declarant's "Class B" vote is to expire ten years from the date the first unit is sold, or thirty days after seventy-five percent of the units are sold, whichever comes first. The declaration deems these events "the end of Declarant control." However, under WIS. STAT. § 703.15(2)(c)1., the ten-year expiration period applies only to expandable condominiums; that is, condominiums to which additional property or units may be added pursuant to the declaration. *See* WIS. STAT. § 703.02(9). The declaration in this case does not appear to authorize such expansion, and therefore a three-year period of declarant control would seem to apply. *See* WIS. STAT. § 703.15(2)(c)1.b. The circuit court should determine which expiration period applies, and whether the applicable period of declarant control has lapsed. The court should also determine whether Northernaire provided written notice that it was terminating any "Class B" vote to which it was entitled.[8]

---

[8] There is conflicting record evidence on this point. Brian McManus, president of the Association, stated at deposition that Northernaire seated its "Class B" vote on November 30, 2010. At the restraining order hearing, however, he represented to the court that Northernaire had surrendered its Class B vote on the same date.

¶ 31. On remand, the court will also need to address the remaining claims left unresolved by the non-final order at issue in this appeal.

*By the Court.*—Order reversed and cause remanded with directions.