PATIENCE DRAKE ROGGENSACK, J.
¶ 75. (dissenting). I write in dissent because, based on the pleadings and the materials submitted in the summary judgment and declaratory judgment motions, I conclude that the majority opinion erroneously decides that American Family Insurance Company, Vicki Biasing's automobile liability carrier, must assume the defense and indemnification of Menard, Inc. that was initially undertaken by Zurich American Insurance Company, Menard's liability carrier.[1] The majority opinion errs because it does not fully address the issue American Family presented: "Does the concept of a permissive user under the Omnibus Statute, § 632.32(3)(a), Stats., require an injured person's own liability insurer to defend and indemnify the tortfeasor who injured the insured, and where the tortfeasor has *91 its own liability insurance?"[2] It also errs in failing to follow proper summary judgment procedure.
¶ 76. I conclude that the majority opinion should not avoid American Family's stated issue, but rather, address it and conclude that when a direct action has been commenced against the insurer of a named defendant, as is the case here, the defendant's insurer must provide the defense unless that insurer first can prove there is no coverage for any of the claims made. Public policy requires that order of proceeding in the case at hand to meet American Family's stated issue and to prevent the conversion of Biasing's personal automobile policy into comprehensive liability insurance for Menard.
¶ 77. By ignoring American Family's stated issue and Biasing's direct action claims against Zurich[3] and then permitting Zurich and Menard to shift the court's focus to whether Menard's employee was a "permissive user" of Biasing's vehicle under the policy American Family issued to Biasing,[4] the majority opinion contravenes basic summary judgment principles and decides disputed issues of material fact relative to Biasing's direct action against Zurich.[5]
¶ 78. I would reverse the court of appeals and remand the matter to the circuit court, with Zurich providing the defense to Biasing's claims because Zurich has provided nothing to disprove Biasing's allegation that Zurich insured Menard for her claims. Because the majority opinion chooses not to address American Family's stated issue and then ignores *92 Biasing's direct action against Zurich in this summary judgment proceeding and erroneously converts Biasing's automobile liability policy into comprehensive liability insurance for Menard, I respectfully dissent.[6]
I. BACKGROUND
¶ 79. This lawsuit against Menard involves Biasing's safe-place claims, which are based on Menard's conduct, and her common law negligence claim, which seeks to impose vicarious liability on Menard based on Menard's employee's conduct. This dispute is not about whether an injured person will be compensated for the injuries sustained. Rather, it concerns who will defend Menard and if Biasing is successful, who will pay.[7]
¶ 80. Stated otherwise, we are concerned with whether American Family's automobile liability policy, for which Biasing paid, will be converted into comprehensive liability insurance for Menard, by causing American Family to defend and indemnify Menard. It is also about whether Biasing's direct action against Zurich will be overlooked by focusing on the coverage provisions of Biasing's automobile policy, rather than on the summary judgment procedure applicable to motions under Wis. Stat. § 802.08. Accordingly, it is critically *93 important to recognize that the context in which this case arises includes a tortfeasor who has its own insurance and a direct action claim against the tortfeasor's insurer. It is this context that drives my dissent from the majority opinion.
¶ 81. Biasing's injuries arose on September 16, 2008, when she purchased boards from Menard and proceeded to a loading area to have them placed in her vehicle. She was standing near the rear passenger side of her vehicle as a Menard employee began to load the boards with a forklift. During the loading, some of the boards fell onto Biasing's foot, causing her injury.
¶ 82. On January 24, 2011, Biasing sued Menard based on two theories: (1) liability for Menard's violations of the safe-place statute, Wis. Stat. § 101.01 et seq.; and (2) liability for the acts of its employee in negligently handling the boards while loading Biasing's vehicle. Biasing also brought a direct action against Zurich, Menard's liability carrier. She did not sue the Menard employee who loaded the boards onto her vehicle.
¶ 83. On March 7, 2011, Zurich and Menard answered, admitting that Zurich "issued a policy of liability insurance" to Menard, but denying Biasing's allegations of safe-place violations and negligence.[8]
¶ 84. On May 31, 2011, Menard tendered its defense to American Family, who was Biasing's automobile liability carrier at the time of the accident. Menard's tender ignored Biasing's safe-place claims. Instead, Menard focused on the common law negligence claim and contended that its employee was "using" Biasing's vehicle with her permission while loading the boards; and therefore, there was coverage for Biasing's *94 injuries under her own automobile liability policy due to the requirements of the omnibus statute, Wis. Stat. § 632.32(3).
¶ 85. On August 2, 2011, American Family moved to intervene in the action to defend against Menard's tender. On January 23, 2012, American Family moved for summary judgment that it had no duty to defend or indemnify Menard for Biasing's claims. American Family submitted the automobile liability policy it issued to Biasing for court interpretation.
¶ 86. On January 24, 2012, Menard and Zurich moved for declaratory judgment asking the court to summarily hold that American Family had a duty to defend and indemnify Menard for liability arising from Biasing's claims. Although documents were submitted in support of their motion, Zurich chose not to submit the liability policy it admitted that it issued to Menard. Therefore, Zurich's liability policy is not in the record for us to interpret.
¶ 87. The circuit court granted American Family's motion, holding that it had no duty to defend or to indemnify Menard for Biasing's injuries under her automobile liability policy. The circuit court concluded that it would not have been within the reasonable expectation of Biasing when she purchased the American Family policy that American Family would defend tortfeasors who injured her and provide indemnity to Menard if Biasing succeeded on her claims against Menard and Zurich. The circuit court found Lawver v. Boling, 71 Wis. 2d 408, 238 N.W.2d 514 (1976), most persuasive.
¶ 88. The court of appeals reversed, concluding that American Family had both a duty to defend and to indemnify Menard, relying largely on the omnibus *95 statute, Wis. Stat. § 632.32(3). Blasing v. Zurich Am. Ins. Co., 2013 WI App 27, ¶ 33, 346 Wis. 2d 30, 827 N.W.2d 909.
II. DISCUSSION
A. Standard of Review
¶ 89. In this review of summary judgment, we apply the same standard of review as did the court of appeals and the circuit court, but benefitting from their analyses.[9] Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶ 16, 291 Wis. 2d 283, 717 N.W.2d 17. Summary judgment begins with a review of the complaint to determine whether it states a claim. Westphal v. Farmers Ins. Exch., 2003 WI App 170, ¶ 9, 266 Wis. 2d 569, 669 N.W.2d 166. Next, "we review the answer to determine whether it joins a material issue of fact or law." Id. If we determine that issue has been joined, we examine the submissions of the parties to determine whether there are material facts in dispute that would require a trial and whether the evidence is sufficient to decide the legal issues that have been joined. See id.
B. Blasing's Claims
1. Safe-place violations
¶ 90. Biasing sued Menard for violations of the safe-place statute, Wis. Stat. § 101.01 et seq. Biasing alleged that she was a frequenter or invitee within the meaning of the safe-place statute and that Menard:
*96 a. Failed to furnish a place for employees, frequenters, and/or invitees, which was safe, as that term is defined in Wis. Stat. § 101.01;
b. Failed to furnish and use safety devices and safeguards and failed to adopt and use methods and processes reasonably adequate to render the subject property safe, as that term is defined in Wis. Stat. § 101.01;
c. Failed to do every other thing reasonably necessary to protect the life, health, safety, and welfare of employees, invitees and/or frequenters at the subject property where the Plaintiff, Vicki L. Biasing, was injured;
d. Failed to properly construct the subject property/parking lot/surrounding areas, inspect, maintain, repair, safeguard, and warn so as to render the subject property safe, as those terms are defined in Wis. Stat. § 101.01 [.]
¶ 91. Pursuant to Wis. Stat. § 101.11, "[ejvery employer and every owner of a place of employment or a public building ... shall so construct, repair or maintain such place of employment or public building as to render the same safe." Accordingly, a safe-place claim may be based on the allegation that an employer or owner of a place of employment or public building failed to maintain the building as safely as the nature of the facility would reasonably permit. Kochanski v. Speedway SuperAmerica LLC, 2014 WI 72, ¶ 30, 356 Wis. 2d 1, 850 N.W.2d 160; Megal v. Green Bay Area Visitor & Convention Bureau, Inc., 2004 WI 98, ¶ 22, 274 Wis. 2d 162, 682 N.W.2d 857. What constitutes a safe-place violation de'pends on "the facts and conditions present, and the use to which the place 'was likely to be put.'" Gross v. Denow, 61 Wis. 2d 40, 47, 212 N.W.2d 2 (1973) (citations omitted).
*97 ¶ 92. Biasing's safe-place claim arises from Menard's policies and facilities at the time the boards were loaded onto her vehicle.[10] This claim is grounded in a failure of Menard, not in a failure of its employee. See Megal, 274 Wis. 2d 162, ¶ 9. Blasing's safe-place claims do not constitute use or operation of her vehicle. Cont'l Nat'l Ins. Co. v. Carriers Ins. Co., 55 Wis. 2d 533, 536-37, 200 N.W.2d 584 (1972) (concluding that unsafe loading and unloading facilities that violated the safe-place statute were not part of the act of unloading and therefore, did not constitute use or operation of a vehicle). In addition, there are different tortfeasors for Biasing's two claims. Menard is the putative tortfeasor for Biasing's safe-place claim, while Menard's employee is the putative tortfeasor for her negligence claim, as explained below.
¶ 93. In Amery Motor Co. v. Corey, 46 Wis. 2d 291, 174 N.W.2d 540 (1970), we also concluded that unsafe loading facilities are not part of loading or unloading a vehicle. We explained that faulty construction of the premises "was not a part of the loading and unloading operation but resulted in a condition of the premises which would normally be covered under a comprehensive liability policy on the premises." Id. at 300. We said that "loading and unloading coverage added to an automobile liability policy . . . was not intended to take the place of comprehensive insurance on the premises." Id. at 301.
¶ 94. In Sampson v. Laskin, 66 Wis. 2d 318, 224 N.W.2d 594 (1975), we again considered the differing factual predicates between safe-place claims and those based on the "use" of a vehicle. There, prior to the accident, two employees were loading barrels of waste *98 material from an elevator into a truck owned by their employer. Id. at 321. In order to get the last of the barrels into the truck, they employed a bypass switch on the elevator so it rose without the door being closed. Id. at 322. When they raised the elevator to the level of the truck bed, there was an 18-inch gap between the truck and the elevator floor on which the barrels sat. Id. In an effort to move the barrels from the elevator over the gap and into the truck, the employees placed a loose sheet of metal as a make-shift bridge over the gap. Id. Unfortunately, as the employees were using this makeshift bridge, it slipped and both employees fell 26 feet into the pit of the elevator. Id. at 322-23.
¶ 95. The injured employee and the estate of the deceased employee sued the owners of the building alleging violations of the safe-place statute because of the availability of the bypass switch that the plaintiffs used to override a safety feature of the elevator. Id. at 326. The jury found for the plaintiffs and that determination was not appealed. Id.
¶ 96. The defendant-owners, in turn, filed a third-party complaint against Liberty Mutual Insurance Company under the automobile liability policy issued to the plaintiffs' employer, into whose truck the barrels were being loaded. Id. at 334. The defendant-owners claimed that they were covered under the automobile policy because the accident occurred during the loading of the truck. Id. In dismissing the defendant-owners' claim under the automobile policy, we explained that the "[l]oading and unloading coverage, added to an automobile liability policy,.. . 'was not intended to take the place of comprehensive insurance on the premises,' particularly not so in safe-place cases." Id. at 336 (citation omitted).
*99 ¶ 97. Other jurisdictions also adhere to our view that safe-place claims based on loading and unloading facilities and policies are excluded from use or operation of a vehicle "because the owner's duty to maintain a safe place 'was not a step in the specific operation of unloading a truck.'" Amery, 46 Wis. 2d at 301 (citation omitted).[11]
¶ 98. Accordingly, safe-place violations are not part of loading or unloading a vehicle or a "use" of a vehicle. Id. Therefore, in regard to Biasing's safe-place claims, there is no basis for coverage under Blasing's automobile policy. Sampson, 66 Wis. 2d at 335-36; Continental, 55 Wis. 2d at 536-37; Amery, 46 Wis. 2d at 301.
2. Common law negligence
¶ 99. Biasing also sued Menard for the common law negligence of its employee in loading boards onto her vehicle. On that claim, Menard has potential liability based on vicarious liability under the doctrine of respondeat superior, which imposes liability on an employer for the acts of its employee within the scope of the employee's employment. Brown v. Acuity, Mut. Ins. Co., 2013 WI 60, ¶ 27, 348 Wis. 2d 603, 833 N.W.2d 96; Peters v. Menard, Inc., 224 Wis. 2d 174, 193 n.8, 589 N.W.2d 395 (1999).
¶ 100. Respondeat superior imposes vicarious liability based on the existence of a master-servant relationship. Kerl v. Dennis Rasmussen, Inc., 2004 WI 86, ¶ 4, 273 Wis. 2d 106, 682 N.W.2d 328. "Vicarious liability under respondeat superior is a form of liability without fault." Id. Vicarious liability may result from *100 the right to control the activities of another, such as is found in the control of an employee by an employer during the scope of the employee's employment. Lewis v. Physicians Ins. Co. of Wis., 2001 WI 60, ¶ 12, 243 Wis. 2d 648, 627 N.W.2d 484; see also Restatement (Second) of Agency § 219 (1958).
¶ 101. There is a difference between an employer's vicarious liability for an employee's conduct and the conduct of the employee, himself. For example, an employer who is liable due to the doctrine of respondeat superior is not a tortfeasor;[12] rather, the employer's liability stems from the particular type of agency relationship created when the employee is acting within the scope of his employment. See Schinner v. Gundrum, 2013 WI 71, ¶ 47 n.13, 349 Wis. 2d 529, 833 N.W.2d 685; Restatement (Second) of Agency § 219 (1958); see also St. Paul Fire & Marine Ins. Co. v. MAG Mut. Ins. Co., 433 S.E.2d 112, 113 (Ga. Ct. App. 1993).[13]
¶ 102. In Schinner, we recently explained that an employer,
is subject to the liability for damages flowing from the tortious conduct of its employee. This liability is imposed upon [the] assured by law under the rule of respondeat superior. Although the [employer] may be held liable for such tort, it cannot be said that [the employer] committed the assault.
Schinner, 349 Wis. 2d 529, ¶ 47 n.13 (quoting Fox Wis. Corp. v. Century Indem. Co., 219 Wis. 549, 551-52, 263 N.W. 567 (1935)). The conclusion that an employer who has vicarious liability under the doctrine of respondeat *101 superior is not a tortfeasor is consistent with our conclusion that vicarious liability under respondeat superior is liability without fault. Kerl, 273 Wis. 2d 106, ¶ 4.
¶ 103. It is only the common law negligence claim for which there potentially could be coverage under the American Family policy. American Family focuses on this claim with two facts that are significant, one of which the majority does not address. American Family questions whether the "concept of use" should be applied to the insured's policy under the omnibus statute when (1) the insured is injured by a tortfeasor and (2) the tortfeasor has insurance of its own.
¶ 104. The second fact, that the tortfeasor has its own insurance for the accident, is extremely significant because the omnibus statute has as its purpose assuring that accident victims have insurance coverage. Nordahl v. Peterson, 68 Wis. 2d 538, 551, 229 N.W.2d 682 (1975); Venerable v. Adams, 2009 WI App 76, ¶ 14, 318 Wis. 2d 784, 767 N.W.2d 386. Therefore, construing the "concept of use" narrowly under the policy to exclude those tortfeasors who injure the insured and also have their own insurance will not conflict with the omnibus statute's purpose of providing insurance coverage to injured persons because of Zurich's insurance policy.
C. Summary Judgment
¶ 105. Zurich moved for summary declaration that American Family has the duty to defend and indemnify Menard. Consistent with summary judgment methodology, I begin with an examination of the complaint to determine what it alleges in regard to the duty to defend and indemnify. See Admanco, Inc. v. 700 Stanton Drive, LLC, 2010 WI 76, ¶ 28, 326 Wis. 2d 586, *102 786 N.W.2d 759. The complaint shows that Biasing sued Menard. She also brought a direct action against Zurich, as is permitted by Wis. Stat. § 632.34. Backus Elec., Inc. v. Petro Chem. Sys., Inc., 2013 WI App 35, ¶ 12, 346 Wis. 2d 668, 829 N.W.2d 516. In regard to Menard, Biasing pled safe-place violations based on allegations that Menard did not make the loading facility as safe as it would reasonably permit. She also pled a common law negligence claim based on the acts of Menard's employee during the scope of his employment. In regard to Zurich, she claimed that Zurich provided insurance to Menard and its employees "against the liability of the type" for which she had claimed, i.e., for safe-place violations and for negligence. Biasing adequately stated her claims.[14]
¶ 106. The second step in summary judgment determinations is to examine the answer. Admanco, 326 Wis. 2d 586, ¶ 28. Zurich admits that it "issued a policy of liability insurance" to Menard, with unstated conditions.[15] Accordingly, issues of material fact were joined in regard to whether Zurich insured Menard for the alleged safe-place violations and the negligence claim set out in the complaint.
¶ 107. The third step in summary judgment methodology is to examine the materials submitted by the moving party to see whether that party has made a prima facie showing that there are no material issues of fact in dispute and that that party should prevail on a question of law without a trial. Id. In regard to Zurich, it submitted no evidence that it does not insure Menard "against the liability of the type" set out in the complaint, i.e., safe-place violations and vicarious liability for common law negligence.
*103 ¶ 108. Instead, Zurich artfully shifted all court focus to American Family's automobile liability policy, which prevented a summary judgment analysis of Biasing's direct claim against Zurich.[16] Zurich's skillful approach also prevented the court from fully addressing the issue American Family presented for our review. However, when I apply summary judgment procedures, it becomes apparent that Zurich has not met the standard necessary to negate Biasing's direct action claim that Zurich insured Menard for Biasing's claims. Summary judgment should be denied and Zurich must proceed to defend Menard unless it first can prove that the liability policy it admits it provided to Menard covers none of Biasing's claims.
¶ 109. If Zurich's obligations to defend and indemnify Menard are not determined before this matter proceeds, Zurich and Menard will have succeeded in converting American Family's automobile liability policy into a comprehensive liability policy for Menard because American Family will have to shoulder a defense to claims, at least one of which falls outside of the scope of its policy and the omnibus statute. See Sampson, 66 Wis. 2d at 336. Failing to first address Zurich's obligations also will prevent court consideration of the issue American Family presented for our review: "Does the concept of a permissive user under the Omnibus Statute, § 632.32(3)(a), Stats., require an injured person's own liability insurer to defend and indemnify the tortfeasor who injured the insured, and where the tortfeasor has its own liability insurance?"
*104 III. CONCLUSION
¶ 110. In conclusion, I write in dissent because, based on the issue American Family submitted for our review, the pleadings and the materials submitted in the summary judgment and declaratory judgment motions, I conclude that the majority opinion erroneously decides that American Family, Vicki Biasing's automobile liability carrier, must assume the defense and indemnification of Menard that was initially undertaken by Zurich, Menard's liability carrier. The majority opinion errs because it does not fully address the issue American Family presented: "Does the concept of a permissive user under the Omnibus Statute, § 632.32(3)(a), Stats., require an injured person's own liability insurer to defend and indemnify the tortfeasor who injured the insured, and where the tortfeasor has its own liability insurance?" It also errs in failing to follow proper summary judgment procedure.
¶ 111. I conclude that the maj ority opinion should not avoid American Family's stated issue, but rather, address it and conclude that when a direct action has been commenced against the insurer of a named defendant, as is the case here, the defendant's insurer must provide the defense unless that insurer first can prove there is no coverage for any of the claims made. Public policy requires that order of proceeding in the case at hand to meet American Family's stated issue and to prevent the conversion of Biasing's personal automobile policy into comprehensive liability insurance for Menard.
¶ 112. By ignoring American Family's stated issue and Biasing's direct action claims against Zurich and then permitting Zurich and Menard to shift the court's focus to whether Menard's employee was a "permissive *105 user" of Biasing's vehicle under the policy American Family issued to Biasing, the majority opinion contravenes basic summary judgment principles and decides disputed issues of material fact relative to Biasing's direct action against Zurich.
¶ 113. I would reverse the court of appeals and remand the matter to the circuit court, with Zurich providing the defense to Biasing's claims because Zurich has provided nothing to disprove Biasing's allegation that Zurich insured Menard for her claims. Because the majority opinion chooses not to address American Family's stated issue and then ignores Biasing's direct action against Zurich in this summary judgment proceeding and erroneously converts Biasing's automobile liability policy into comprehensive liability insurance for Menard, I respectfully dissent.
¶ 114. I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this dissent.

 Majority op., ¶ 8.

 American Family brief, p. 1.

 Majority op., ¶ 74.

 Id, ¶ 5.

 Complaint, ¶ 2; Zurich's and Menard's answer, ¶ 2.

 The majority opinion misperceives the dissent when it asserts that "[t]he dissent addresses issues not argued or briefed." Majority op., ¶ 8 n.2. The focus of American Family's question and of the dissent are whether an injured party's automobile policy should be converted into liability insurance for a tortfeasor who has insurance of its own for the accident.

 It is also about Erickson v. Menard, Inc., La Crosse County Case No. 10CV324, which is pending in La Crosse County and presents the same issue, i.e., whether Menard will be permitted to convert an injured party's automobile liability policy into comprehensive insurance for Menard. Petition for Review, p. 19.

 Zurich answer, ¶¶ 2-12.

 Actions for declaratory judgment relief may be determined in summary judgment proceedings. Northernaire Resort & Spa, LLC v. Northernaire Condo. Ass'n, 2013 WI App 116, ¶ 12, 351 Wis. 2d 156, 839 N.W.2d 117 (concluding that a motion for declaratory judgment is better described as one for summary judgment).

 Complaint, ¶¶ 8-12.

 See also Suter, Loading and Unloading, 31 Ins. Couns. J. 112 (Jan. 1964); Cosmopolitan Mut. Ins. Co. v. Balt. & Ohio R.R., 240 N.Y.S.2d 88 (1963).

 A tortfeasor is "[o]ne who commits a tort," i.e., a legally cognizable wrong. Black's Law Dictionary 1627 (9th ed. 2009).

 See also 18B Am. Jur. 2d Corporations § 1832 (2014); Restatement (Third) of Agency § 2.04 (2006).

 Complaint, ¶ 2.

 Answer, ¶ 2.

 Menard has used this same approach in other venues to shift its insurer's obligation to defend and indemnify for harm a Menard employee caused to a customer who had automobile liability insurance. See Menard, Inc. v. Country Preferred Ins. Co., 992 N.W.2d 643 (Ill. App. Ct. 2013).